921 A.2d 1110

RENA BRENMAN AND MITCHELL D. BRENMAN, PLAINTIFFS–RESPONDENTS, v. MICHAEL DEMELLO AND STEPHANIE DEMELLO, DEFENDANTS–APPELLANTS, AND ABC COMPANY, (SAID NAME BEING FICTITIOUS AND UNKNOWN), DEFENDANT.

Argued November 29, 2006—Decided May 30, 2007.

*Kathleen S. Murphy* argued the cause for appellants (*Connell Foley LLP,* attorneys).

*Michael F. Wiseberg* argued the cause for respondents (*Leonard & Leonard, P.A.,* attorneys).

*Bruce H. Stern* argued the cause for amicus curiae, Association of Trial Lawyers–New Jersey (*Stark & Stark, P.C. and Pellettieri, Rabstein & Altman,* attorneys; *Mr. Stern, Michael G. Donahue, III,* and *Anne P. McHugh,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal presents a single issue germane to automobile accident cases: whether expert testimony is required as a condi-

tion precedent to the admission of photographs of vehicle damage when the cause or extent of a plaintiff's injuries are at issue.

We answer that question in the negative. The admissibility of any relevant photograph rests on whether the photograph fairly and accurately depicts what it purports to represent, an evidentiary decision that properly lies in the trial court's discretion. We reject a per se rule that requires expert testimony as a foundation for the admissibility of a photograph of vehicle damage when the photograph is used to show a correlation between the damage to the vehicle and the cause or extent of injuries claimed by an occupant of the struck vehicle. Instead, we commend that judgment to the sound discretion of the trial court. Consistent therewith, a party opposing the admission of photographs of damage to a car remains free to offer expert proofs for the purpose of showing that there is no relationship between the extent of the damage and the cause and severity of the resulting injuries. Conversely, a party proposing the use of photographs of impact may tender its own expert proofs to further support the proposition in its case-in-chief—either that slight impact force results in no or slight injury, or that great impact force results in great injury—or to rebut its opponent's assertions. In the end, however, such expert proofs address the weight to be given to photographs of impact, not their admissibility.

I.

In October 2001, plaintiff Rena Brenman was driving in stop-and-go traffic when her car was struck from behind by a car driven by defendant Stephanie Demello. All parties concede that there was minimal damage to plaintiff's car, but they quarrel about the extent of the damage to defendant's car.

In the end, however, the issue in this case was narrowed to the cause and extent of the injuries to plaintiff attributed to this car accident. Although plaintiff immediately complained of neck and chest pain and requested an ambulance, she was taken home by her step-father, forgoing an emergency room visit. The next day,

plaintiff was seen by her family physician, who referred her to Dr. Zemsky, an orthopedist. He prescribed medication, physical therapy, and the use of a cervical pillow. Plaintiff was away from work for two and one-half months. When she returned to her job, she was unable to work for extended periods, and her employer reduced her work-week accordingly.

In early December 2001, Dr. Zemsky ordered an MRI of plaintiff's neck. Based on the MRI results, he referred plaintiff to Dr. Kasoff, a neurosurgeon who, after additional diagnostic tests, recommended surgery. Plaintiff sought a second opinion from Dr. Kalko, who confirmed both Dr. Kasoff's diagnosis and the need for surgery. In August 2002, ten months after the car accident, a three-level cervical fusion was performed on plaintiff, which involved the removal of three discs and their replacement with "spacers."

Two months before undergoing this operation, plaintiff filed a complaint [1] alleging that her injuries were the direct and proximate result of defendant's negligent behavior that resulted in the car accident.[2] Seeking to minimize, if not defeat, plaintiff's claim—which she asserted at trial totaled $713,000—defendant intended to offer into evidence photographs [3] produced by plaintiff

[1] The second count of the complaint alleges derivative, per quod claims by Mitchell Brenman, plaintiff's husband. Because his claims depend on the viability of his wife's claims, they are not necessary for the resolution of this case. For that reason, all references to "plaintiff" address Rena Brenman alone.

[2] The claims alleged against defendant Michael Demello, Stephanie's father, arise only because he owned the automobile involved in the accident, a matter also not necessary for the resolution of this case. Hence, all references to "defendant" address Stephanie Demello alone.

[3] The trial record is unclear whether plaintiff produced in discovery, and defendant offered at trial, one or more than one photograph; at points the parties speak of but one photograph, yet at others they refer to the plural. As best we can interpret, plaintiff produced two small photographs in discovery, which were marked as a single trial exhibit. Defendant enlarged and based much of her arguments on only one of the photographs (which itself was marked as a separate trial exhibit). All of the photographs were admitted in evidence.

in discovery showing admittedly minimal damage to the rear bumper of plaintiff's car. Defendant's undisguised purpose for the admission of those photographs was to argue to the jury that, due to the small amount of damage to plaintiff's rear bumper, plaintiff could not have suffered either the type or extent of injuries she alleged. Plaintiff did not resist that effort until jury selection, when she filed a motion in limine seeking to bar the admission of the photographs absent expert proofs to connect the condition depicted in the photographs and the biomechanical forces that resulted from the impact between the two cars.

After the jury was selected, sworn, and excused for lunch, the trial court considered plaintiff's "in limine motion regarding the photographs of the automobile." Acknowledging that "[t]here's never been a dispute among the parties that [plaintiff] had minor damage to the rear of her car[,]" plaintiff asserted that "the sole purpose of this photograph is to try to show that ... there's no way [plaintiff] could have sustained the injuries that she [asserts she] sustained in this accident." According to plaintiff, "those matters are really scientific matters that require expert testimony through a biomechanical expert, an engineer, somebody who has the requisite training and experience to advise the jurors on the relationship between the damage or lack thereof" to plaintiff's automobile and her physical injuries. In plaintiff's view, "it would be so prejudicial to let the jurors speculate on the relationship between one photograph and [plaintiff's] injuries." Summing up, plaintiff argued that it is "the province of an expert to draw that type of conclusion" and that "it shouldn't be to the jurors to wildly speculate on their own theories [by] looking at the rear of the car and then making a determination whether or not it can cause somebody's injuries."

In response, defendant asserted that "although defendants [will] present testimony describing the minimal impact [as the] amount

However, during trial, defendant relied exclusively on the enlarged photograph alone. For ease of reference, we refer to "photographs" and not to a single one.

24

of impact, the photograph is demonstrative evidence bearing on that issue." In defendant's view, "the jury is entitled to see the demonstrative evidence of what is alleged [as] the nature, severity of the impact." Relying heavily on an unpublished decision of the Appellate Division,[4] defendant argued that the photographs were admissible for several reasons: to prove the severity of the impact; to describe the physical damage to plaintiff's vehicle; to allow the jury to infer the amount of force needed to cause that damage; and to determine whether and to what extent plaintiff's injuries were caused by that force.

The trial court, although originally "inclined to rule that the photograph would be inadmissible[,]" ultimately concluded that the photographs were admissible. Focusing on the balancing test embodied in *N.J.R.E.* 403, the trial court explained that "[c]ertainly this is evidence which would otherwise be [ ]admissible, except for the fact that undue prejudice may be present." It noted that "[p]hotographs of automobiles involved in collisions . . . offered as probative of the severity of injuries have been deemed admissible in spite of undue prejudice claims." It explained that "[t]he possibility of some inflammatory effect on the jury is compared with the relevancy[,] and [the] generally accepted admissibility of the photographs of the scene of an automobile accident is best left to the discretion of the trial court." The trial court reasoned that the "anticipat[ion] that the police officer who investigated at the scene will be here to testify" was "a very significant issue . . . in determining . . . whether or not there is any undue prejudice which would justify the exclusion of this otherwise admissible photograph."

Addressing the discrete issue certified before us, the trial court explained that

---

[4] *Ortiz v. Schubert,* No. A–5081–02T2, 2004 *WL* 5301156 (App.Div. May 17, 2004), *certif. granted,* 181 *N.J.* 546, 859 A.2d 690 (2004), *cross-petition for certif. granted,* 181 *N.J.* 545, 859 A.2d 690 (2004), *appeal dismissed as moot* (Apr. 13, 2005). Defendant complied with *Rule* 1:36–3 regarding the use of unpublished opinions.

where the photographs have been offered not to prove causation but, instead, to address the disputed issue of the severity of impact[,] the photographs were not scientific evidence so as to [re]quire expert testimony[,] and no expert testimony is needed to describe the physical damage of the vehicle or to allow the jury to infer ... the force that would cause the damage. *Jurors can infer from their viewing photographs that the plaintiff could not have been as seriously injured as she claimed* .... It is also appropriate for defendant to comment on the photographs and to argue the inferences to be drawn therefrom in an effort to refute the plaintiff's experts' medical testimony as to the seriousness and permanency of the injuries sustained.

[ (emphasis supplied).]

The trial court thus found that "the photograph is admissible under the circumstances of this case" because "[w]e do anticipate that there will be investigating officer[ ] testimony, which will further be probative as to the condition of the vehicles at the scene of the accident." [5]

At trial, defendant conceded that she was liable for the accident, but, relying in large measure on the photographs, she contested whether plaintiff's injuries were caused by the accident and, if so, to what extent. Thus, during her opening statement to the jury, defendant's counsel explained that "Stephanie was driving under 10 miles an hour when she tapped the rear of this car bumper to bumper. That's what happened. That's the photograph."

Plaintiff presented her case-in-chief, including the testimony of her medical expert, Dr. Paul Ratzker, a neurosurgeon. He opined that the cause of plaintiff's symptoms was osteophyte, an abnormal protrusion of bone. He explained that osteophyte is a degenerative condition that frequently is a byproduct of the aging process. He testified that, in plaintiff's case, the bone protrusion in her spine was pressing against the nerve root, thus causing plaintiff's maladies. He explained that plaintiff's osteophyte existed prior to her car accident, but that the trauma of the accident

---

[5] During plaintiff's cross-examination at trial, defendant laid the foundation for the admission of the photographs. The trial court, consistent with its pre-trial, in limine ruling, admitted the photographs in evidence. At that point, the trial court also rejected plaintiff's first request for a limiting instruction, explaining that prior precedent "permit[s] the use of the photographs without a limiting instruction...."

caused plaintiff's bone protrusion to impact her nerve root. Dr. Ratzker acknowledged, however, that no objective findings of the osteophyte had been found for at least four to six months after the accident, and that only an MRI disclosed that condition.

In order to counter defendant's assertion that the force of the impact was too slight to cause, either in whole or in part, the injuries claimed by plaintiff, on re-direct examination Dr. Ratzker addressed the correlation between the amount of force applied to the rear bumper of plaintiff's car and the cause and extent of plaintiff's injuries. In his view, the cause of plaintiff's injuries, which he described as an "extension flexion injury," "totally depends on the momentum or the velocity of [the car's] seat against the patient's upper back. It doesn't have anything to do with what happened to the bumper or what not."

The core of the defense was presented through the testimony of defendant's medical expert, Dr. Eric Fremed, a neurologist. Although he candidly agreed that plaintiff required surgery to correct her spinal problems, he strongly disagreed that plaintiff's ailments were caused by the accident. In Dr. Fremed's own words, "I'm simply saying that [the] need for surgery has nothing to do with the accident." According to Dr. Fremed, plaintiff's condition was degenerative in nature, one "that takes years to form" and one that was not caused by the trauma of the automobile accident.

In her closing argument, defendant returned to the theme first explored in her opening statement: that the slight impact between her car and plaintiff's car could not have caused plaintiff's injuries. She argued to the jury, in part, as follows:

I opened as a fender bender. I'm going to close as a fender bender. That's what [it] was. [Plaintiff and her husband], however … now want [defendant] to pay for some close to $400,000 in future lost wages, some $270,000 they're claiming for future household items, for a surgery, a triple cervical fusion all as a result of that. All as a result of that fender bender.

. . . .

My client Stephanie Demello is being charged with a lot of things, all this future income, all these household services, all this money, all this injury from a minor

fender bender. I opened with it, ladies and gentlemen, and I'll close with it. This is a fender bender. This is not a lottery.

Plaintiff did not object contemporaneously to those remarks, either when made or at the close of defendant's summation.

After being charged on proximate causation in the context of a claim of aggravation of a preexisting condition that was asymptomatic at the time of the accident, and later, at the jury's request, being re-instructed on the concept of proximate cause, the jury determined that defendant's actions were not the proximate cause of plaintiff's injuries and returned a verdict of no cause of action.

Plaintiff filed a motion for a new trial, principally arguing that it was error to admit the photographs without an appropriate limiting instruction, and that defendant's repeated reference to the accident as a "fender-bender" caused the jury to speculate as to the cause of plaintiff's injuries without the benefit of expert biomechanical testimony. The trial court denied plaintiff's motion, specifically stating that it would "not substitute [its] judgment for that of the jury who entered what [it] believe[d] to be a fair and just verdict under the circumstances." The trial court noted that, while it might "have been somewhat surprised by the outcome, [it] certainly wasn't shocked by it." It explained:

The determination by the jury in finding against the plaintiff was certainly within the realm of probability based upon the evidence submitted. Credibility—the credibility of the plaintiff and the plaintiff's witnesses were certainly an issue, perhaps to a higher degree than other trials [the court had] been involved in.... But this was—this was a trial which was well presented by both sides, and the jury made a determination, which [the court is] satisfied should not be set aside and should stand.

Speaking directly to the issue of the photographs, the trial court noted that the matter

was evidential, and you say ["]well, it was prejudicial[."] I]n [the court's] opinion[,] all evidence presented by both sides is prejudic[ial.] The question is, is it unduly prejudicial? Is it unfair to present that under the circumstances? And [the court does not] believe that it was unfair. [I]n compliance with the *Rules of Evidence,* the attorneys were able to present on behalf of their respective clients significant testimony.... [The court does] not find that there was a miscarriage of justice, nor do[es the court] find that the plaintiff's case was unduly prejudiced by the presentation and admission into evidence of the photograph of the plaintiff's vehicle.... [I]t was totally fair and appropriate to introduce that photograph....

> [T]he trial was conducted appropriately, the evidence submitted, including the photographs[,] was appropriate, the charge ... given to the jury [ ] was also appropriate....

On appeal, plaintiff contended that the trial court erred in admitting the photographs without a corresponding limiting instruction restricting their use to prove causation. Plaintiff also argued that, by failing to require expert testimony as to the link between vehicle damage and the occupant's injuries, the trial court erred when it allowed defendant to invite the jury to speculate as to that link. The Appellate Division agreed, and reversed and remanded the case for a new trial. *Brenman v. Demello,* 383 *N.J.Super.* 521, 538, 892 *A.*2d 741 (App.Div.2006). Defining the issue as the intersection between "the physics of a particular accident" and "a particular injury to a particular individual[,]" the panel held that "a party's use of photographs depicting minimal vehicular damage to suggest just such a causative correlation invites and encourages jury supposition and conjecture, without a basis in the evidence, that the plaintiff's injuries could not have been caused by a relatively minor accident." *Id.* at 535–36, 892 *A.*2d 741. Endorsing the analysis embraced by the Supreme Court of Delaware in *Davis v. Maute,* 770 *A.*2d 36 (Del.2001), the panel adopted a per se rule that requires expert testimony to prove a causal link between the extent of damage to an automobile in an accident and the cause or extent of injuries arising from that accident. *Brenman, supra,* 383 *N.J.Super.* at 535, 892 *A.*2d 741. The Appellate Division concluded that "the cumulative effect of admitting the photographs without a limiting instruction and allowing counsel to prominently argue an improper inference resulted in an unfair verdict" requiring a new trial. *Id.* at 536, 892 *A.*2d 741.

The panel cautioned, however, that its "holding should not be construed broadly to require expert testimony in every case in order for jurors to be permitted to view photographs of vehicles involved in an accident." *Id.* at 537, 892 *A.*2d 741. It explained that "photographic evidence is neither automatically admissible nor excludable, but rather subject to the sound exercise of the

trial court's discretion." *Ibid.* It noted that "[w]hether an expert foundation is required depends, of course, on the particular issue in the case to which the photographic evidence relates." *Ibid.* The Appellate Division nonetheless concluded that "because no expert proof of correlation was produced ... the introduction of the photographs without restriction on their use and the use actually made of them by the defense constitute reversible error." *Id.* at 537–38, 892 *A.*2d 741.

We granted defendant's petition for certification. 187 *N.J.* 492, 901 *A.*2d 955 (2006). On application, we also granted leave to appear as amicus curiae to the Association of Trial Lawyers of America–New Jersey (ATLA–NJ). For the reasons that follow, we reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division.

## II.

Defendant asserts that the Appellate Division's decision cannot be reconciled with prior, long-standing Appellate Division precedent. According to defendant, those earlier decisions render admissible photographs of vehicle damage whenever the severity of the impact is at issue. Thus, defendant argues, to the extent the Appellate Division incorrectly distinguished prior precedent and relied instead on the decision of the Supreme Court of Delaware in *Davis*, the panel's reasoning must be rejected. Defendant also urges that New Jersey should remain within the majority of jurisdictions that allow juries to make the common sense inference that a minor vehicle impact suggests minor occupant injury, and vice versa.

Distinguishing between causation and the extent of damages, plaintiff asserts that prior precedent allowed the admission of photographs of vehicle damage when the issue was the severity of the injuries suffered and not whether the injuries were caused by the accident. Categorizing this case as one where causation is the primary issue, plaintiff argues therefore that defendant's reliance on prior precedent is misplaced. In plaintiff's view, there is

sufficient scientific literature to challenge any inferentially based correlation between the amount of vehicle damage and the infliction of injuries on the occupants. That is why, plaintiff explains, the methodology adopted by the Appellate Division represents the better reasoned approach.

Closely hewing to a relevance analysis, amicus ATLA–NJ supports the position advocated by plaintiff, asserting that photographs of vehicle damage are not relevant to establishing either causation of injury or the nature, extent, or seriousness of injury. That is our inquiry's starting point.

### III.

Like any other evidence tendered at trial, photographs must be relevant; that is, they must "hav[e] a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. Once deemed relevant, the evidence is admissible "[e]xcept as otherwise provided in these rules or by law[.]" *N.J.R.E.* 402. However, even if relevant, evidence nonetheless "may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." *N.J.R.E.* 403. In addition to proving the evidence's relevance and that its probative value is not substantially outweighed by the risk of undue prejudice, the persuasive representational nature of photographs demands that the foundation for the admission of photographs must be properly laid. We have stated the rule as follows: "[t]he authentication of photographic evidence prior to its admission seems to contemplate proof that the photograph is a substantially correct representation of the matters offered in evidence, and this includes an identification or statement as to what the photograph shows." *State v. Wilson*, 135 *N.J.* 4, 14, 637 *A.2d* 1237 (1994) (citations, internal quotation, and editing marks omitted).

No challenge has been interposed here as to whether the photographs of the rear of plaintiff's car were "a substantially

correct representation of the matters offered in evidence" or whether the record includes "an identification or statement as to what the photograph[s] show[ ]." *Ibid.* The sole issue raised in this appeal is whether, in order to satisfy the requirement that the probative value of this evidence is not substantially outweighed by the risk of undue prejudice, expert testimony is required when photographs of vehicle damage are offered to prove either the cause or the extent of the occupant's injuries. Because the determination made by the trial court concerned the admissibility of evidence, we gauge that action against the palpable abuse of discretion standard. *Green v. N.J. Mfrs. Ins. Co.,* 160 *N.J.* 480, 492, 734 *A.*2d 1147 (1999) (holding that "[t]he trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature" and that "[d]eterminations pursuant to *N.J.R.E.* 403 should not be overturned on appeal unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted" (citations and internal quotation marks omitted)). An answer to the question posed in this appeal therefore requires that we explore some of the limits of expert testimony.

## A.

We have explained:

Pursuant to the *New Jersey Rules of Evidence,* "scientific, technical or other specialized knowledge" by a witness "qualified as an expert by knowledge, skill, experience, training, or education" may be admissible "in the form of an opinion or otherwise" if the expert testimony will assist the jury "to understand the evidence or to determine a fact in issue."

[*State v. Townsend,* 186 *N.J.* 473, 490, 897 *A.*2d 316 (2006) (quoting *N.J.R.E.* 702).]

We further have noted that

the rule sets forth three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[*State v. Torres*, 183 *N.J.* 554, 567–68, 874 *A.*2d 1084 (2005) (citations and internal quotation marks omitted).]

It is the first requirement for the admissibility of expert testimony—that "the intended testimony must concern a subject matter that is beyond the ken of the average juror"—that is squarely implicated by the issue posed in this appeal.

Plaintiff asserts that, in an automobile accident, there is no correlation between the amount of vehicle damage and the infliction of injuries on the occupants or the extent thereof and, hence, expert testimony is needed in order to link them. We do not accept that proposition because, in most cases, there is a relationship between the force of impact and the resultant injury, and the extent of that relationship remains in the province of the factfinder. We acknowledge those instances where slight force causes grave injury—a simple misstep off a sidewalk curb resulting in a compound, complex fracture of the leg—as well as those where great force results in little or no injury—the child who miraculously survives a fall out of a high-rise window, or the driver who walks away unscathed from a hideous car crash. Those instances inhabit, however, the margins of common knowledge. Juries are entitled to infer that which resides squarely in the center of everyday knowledge: the certainty of proportion, and the resulting recognition that slight force most often results in slight injury, and great force most often is accompanied by great injury.

Thus, although "[i]t must be conceded that the force of the impact, when two automobiles collide, does not necessarily justify an inference that the occupants of the vehicles sustained serious physical injuries[,]" *Gambrell v. Zengel,* 110 *N.J.Super.* 377, 380, 265 *A.*2d 823 (App.Div.1970),

[a]t the same time it is a generally accepted rule that evidence of the speed at which the colliding cars were traveling, the severity of the physical impact and the manner of the happening of the accident is admissible where there is an issue as to the seriousness of plaintiff's injuries. And this, too, despite admitted liability. [*Ibid.*]

But see *Suanez v. Egeland,* 353 *N.J.Super.* 191, 201–03, 801 *A.*2d 1186 (App.Div.2002) (holding that "defendant failed to establish a

reliable scientific foundation for [the] purported expert opinion on the basis of [the expert]'s own research work, authoritative scientific literature or persuasive judicial decisions" and that "there is no reliable scientific foundation in bio-mechanical studies for an expert opinion that a low-impact automobile accident cannot cause a ... serious injury"). In the end, the standard is clear: in the absence of competent proofs to the contrary, the aggregate of everyday knowledge and experience fairly entitles a jury to infer that there is a proportional relationship between the amount of force applied and the injuries resulting therefrom.

In a similar and more recent setting, the Appellate Division addressed both the admission of photographs showing damage to a vehicle involved in a collision and counsel's argument based thereon. *Spedick v. Murphy*, 266 *N.J.Super.* 573, 630 *A.*2d 355 (App. Div.), *certif. denied*, 134 *N.J.* 567, 636 *A.*2d 524 (1993). The panel summarily dispatched the argument that the photographs should not be admitted into evidence; it referred solely to the standard for admission of a photograph, and concluded that "[t]he photographs, as explained, fairly and accurately depicted the condition of the automobile immediately following the accident, and thus, were properly admitted into evidence." *Id.* at 590, 630 *A.*2d 355. Significantly, in respect of the argument made by counsel based on the photographs, the Appellate Division explained that "[i]t is fundamental that counsel may argue from the evidence any conclusion which a jury is free to arrive at." *Ibid.*

We too have embraced that rule. We have held that, "[a]s a general matter, counsel is allowed broad latitude in summation[.]" *Bender v. Adelson*, 187 *N.J.* 411, 431, 901 *A.*2d 907 (2006) (citations, internal quotation, and editing marks omitted). We have emphasized that "[s]ummation commentary, however, must be based in truth, and counsel may not misstate the evidence nor distort the factual picture." *Ibid.* (citation and internal quotation marks omitted). The potential peril incurred by a transgressor is clear: "When summation commentary transgresses the boundaries of the broad latitude otherwise afforded to counsel, a trial

court must grant a party's motion for a new trial if the comments are so prejudicial that 'it clearly and convincingly appears that there was a miscarriage of justice under the law.' " *Ibid.* (quoting *R.* 4:49–1(a)).

On the whole, that analysis leads us to conclude that the trial court did not palpably abuse its discretion when it permitted the admission of photographs that fairly and accurately depicted the condition of the rear of plaintiff's car—the place where her car was struck by defendant's car—and allowed defendant's counsel to argue that neither the cause nor the extent of plaintiff's injuries could have been the proximate result of the impact. We commend and therefore repeat the analysis applied by the trial court: if evidence is relevant, it is to be admitted unless its probative value is substantially outweighed by its undue prejudicial effect and, once admitted, counsel is permitted to argue to the jury based on that evidence.

### B.

The Appellate Division, however, viewed this matter differently. According to the panel, "[p]hotographs alone cannot provide definitive evidence that the physics of a particular accident—the general forces at work in a collision determined by physical forces analysis—did or did not cause a particular injury to a particular individual." *Brenman, supra,* 383 *N.J.Super.* at 535, 892 *A.*2d 741. That iteration, however, overstates the issue. The admissibility of any evidence cannot be dependent on whether that evidence is "definitive," a concept that speaks to the weight of the evidence and not its admissibility. In order for evidence to be presumptively admissible, we require only that the evidence be relevant. Relevance is measured in terms of reasoned probabilities, not hardened certainties, and is properly gauged as "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. Once evidence is deemed relevant, it is admissible, *N.J.R.E.* 402, unless "its probative value is substantially outweighed by the risk of [ ] undue

prejudice," *N.J.R.E.* 403, or some other bar to its admission is properly interposed. Nothing more is required.

We add only the following. The reasoning of the Appellate Division was strongly influenced by the decision of the Supreme Court of Delaware in *Davis, supra.* There, applying the same analytical construct on which we rely, it was held that, "[a]s a general rule, a party in a personal injury case may not directly argue that the seriousness of personal injuries from a car accident correlates to the extent of the damage to the cars, unless the party can produce competent expert testimony on the issue." *Davis, supra,* 770 *A.*2d at 40 (footnote omitted). The Delaware Supreme Court further held that, "[a]bsent such expert testimony, any inference by the jury that minimal damage to the plaintiff's car translates into minimal personal injuries to the plaintiff would necessarily amount to unguided speculation." *Ibid.*

We cannot subscribe to the limits of *Davis*'s logic. In the main, the fundamental relationship between the force of impact in an automobile accident and the existence or extent of any resulting injuries does not necessarily require "scientific, technical, or other specialized knowledge" in order to "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" *N.J.R.E.* 702. Of course, a party opponent remains free to offer expert proofs for the purpose of persuading the factfinder to overcome an absence of proportionality between the force of the impact and the cause and severity of the resulting injuries. Conversely, a party proponent may tender its own expert proofs to further support the proposition in its case-in-chief—either that slight impact force results in no or slight injury, or that great impact force results in great injury—or to rebut its opponent's assertions. Such expert proofs, however, address the weight to be given to photographs of impact, not their admissibility.[6]

---

[6] *Davis, supra,* concluded that "a party in a personal injury case may not directly argue that the seriousness of personal injuries from a car accident correlates to the extent of the damage to the cars, unless the party can produce

■ Finally, we acknowledge those cases outside the heartland of common knowledge where slight force causes great injury or where great force causes little injury. In order to account for those possibilities, where photographs of vehicle damage are admitted, the trial judge should remind the jury that some bad accidents result in little injury, that some minor accidents result in serious injury, and that, therefore, the level of damage to a vehicle is but one factor to be considered, along with all of the other evidence, in determining the level of plaintiff's injuries resulting from the accident. We commend the matter to the Supreme Court Committee on Model Civil Jury Charges for the formulation of an instruction to that effect.

## IV.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division is reinstated.

Justice ALBIN, concurring.

I concur with most of the majority's analysis, though I do find the admissibility of the photographs to be a close issue. Because I believe that lay testimony describing the force of impact and personal injury is permissible, photographs corroborating that testimony by depicting vehicular damage must be admissible too. I disagree with the majority that there is "certainty of proportion" in relation to force of impact and personal injury. *See ante* at 32, 921 A.2d at 1119. Based on its common knowledge and experience, and depending on the condition of the victim and all of the surrounding circumstances, a jury may infer that a slight impact

---

competent expert testimony on the issue." 770 A.2d at 40. Reasoning that "[c]ounsel may not argue by implication what counsel may not argue directly[,]" it also concluded that "defense counsel's characterization of the accident as a 'fender-bender' was improper," *ibid.* For the reasons set forth above, *supra*, 191 *N.J.* 18, 32–34, 921 A.2d 1110, 1119–20 (2007), we also do not adopt *Davis's* automatic condemnation of the use of the term "fender bender" by counsel.

in a motor vehicle accident generally results in a slight injury. To the extent that the photograph corroborates the nature of the impact, the photograph has probative value. On the other hand, with or without a photograph, the jury is not required to draw what may seem a natural inference—slight impact equals slight injury—if it is inconsistent with the available evidence.

To accept plaintiff's argument that the admissibility of a photograph is conditioned on expert testimony explaining how biomechanical forces caused personal injury in a motor vehicle crash would likewise require expert testimony in every motor vehicle accident involving personal injury to prove causation, even without a photograph. Because I cannot accept that proposition, I concur with the majority.

Justice WALLACE, JR., dissenting.

I respectfully dissent.

To be sure, it is common nature for a fact-finder to conclude from a photograph depicting minor vehicle damage that the resulting injuries were also minor. However, that inclination should not influence the admissibility of the photographs. I agree with the Appellate Division that "photographs depicting slight vehicular damage, although conceivably serving other valid purposes, simply do not support, without corroborative expert proof, the inference that the accident could not have caused the serious injury of which a plaintiff complains." *Brenman v. Demello*, 383 *N.J.Super.* 521, 533, 892 *A.*2d 741 (App.Div.2006).

In this case, the issue was causation of plaintiff's injuries. Because the parties failed to present expert proof demonstrating that the slight damage to the vehicle could not have caused plaintiff's serious injuries, the photographs should not have been admitted without restrictions on their use. In my view, the Appellate Division struck the proper balance in holding that:

photographic evidence is neither automatically admissible nor excludable, but rather subject to the sound exercise of the trial court's discretion. Whether an expert foundation is required depends, of course, on the particular issue in the case

to which the photographic evidence relates. Here, that issue was causation and because no expert proof of correlation was produced, we hold that the introduction of the photographs without restriction on their use and the use actually made of them by the defense constitute reversible error.

[*Id.* at 537–38, 892 *A.*2d 741.]

I would affirm the judgment substantially for the reasons expressed by the Appellate Division.

*For reversal and reinstatement*—Chief Justice ZAZZALI and Justices LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—5.

*For concurrence*—Justice ALBIN—1.

*For affirmance*—Justice WALLACE—1.