**GABRIEL CORRIETTE, Appellant/Plaintiff**
**v.**
**PEDRO MORALES, Appellee/Defendant**

S. Ct. Civ. No. 2007-075
Supreme Court of the Virgin Islands
July 14, 2008

DIANE M. RUSSELL, ESQ., St. Croix, USVI, *Attorney for Appellant.*

RICHARD H. HUNTER, ESQ., Hunter Cole & Bennett, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 14, 2008)

PER CURIAM. Appellant, Gabriel Corriette (hereafter "Corriette"), appeals the Superior Court order that granted the Motion for Judgment Notwithstanding the Verdict (hereafter "JNOV") brought by Appellee, Pedro Morales (hereafter "Morales"), and set aside the jury's $20,000.00 award for future pain and suffering. For the reasons which follow, we will reverse the JNOV order and remand to the Superior Court for a new trial on the issue of damages.

## I. BACKGROUND

On or about November 14, 2000, Corriette, while driving on North Shore Road in St. Croix, brought his Volvo to a sudden halt when several of the vehicles in front of him unexpectedly stopped. As a consequence, Morales's Chevrolet pickup truck rear-ended Corriette's vehicle. The force of the collision caused Corriette to crash into the vehicle in front of him. There was significant damage to the rear end of Corriette's vehicle, as well as damage to the front bumper and hood. Corriette claimed that he suffered multiple injuries, including right arm numbness, whiplash, cervical injuries, and back injuries.

Corriette filed a complaint on December 19, 2000, and Morales answered on January 10, 2001. On March 24, 2003, Morales filed a

pretrial "Motion *In Limine* with Respect to Photographs of Vehicles," and Corriette filed an opposition, arguing that he was entitled to use the photos depicting the damage to his vehicle to help prove the extent of his personal injuries. After a hearing on the issue, the trial judge excluded the photos, holding that they were more prejudicial than relevant because the parties already settled the issue of property damage. Also prior to trial, Morales moved *in limine* to exclude the claims for arthritis and for future medical expenses, and Corriette agreed to waive those particular claims unless counsel opened the door to the claims.

A jury trial commenced on April 7, 2003. At the close of Corriette's case, Morales moved for a directed verdict on the issue of future pain and suffering, pursuant to Federal Rule of Civil Procedure 50(a)(2). The trial judge reserved ruling on the motion. On April 9, 2003, the jury returned a verdict awarding $51,500.00 to Corriette, including: $6,500.00 for past medical expenses, $25,000.00 for past and present pain and suffering, and $20,000.00 for future pain and suffering. After the jury was excused, Morales renewed his motion for a directed verdict on the issue of future pain and suffering. The trial court ordered the parties to submit their positions in writing, which they did by May 6, 2003.

Thereafter, on May 14, 2007, more than four years after trial, the trial court issued its ruling. The order granted Morales's motion for judgment as a matter of law[1] and set aside the portion of the jury award relating to future pain and suffering. On June 13, 2007, Corriette filed his Notice of Appeal.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4 § 32(a). Because the order granting the JNOV motion and setting aside a portion of the jury award was a final order entered on May 14, 2007 and the notice of appeal was filed on June 13, 2007, this appeal is timely. *See* V.I. S. CT. R. 5(a)(1) ("the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court

---

[1] Although Morales moved for a directed verdict, the court treated his motion as a motion for a JNOV.

within thirty days after the date of entry of the judgment or order appealed from . . .").

■ Our review of the Superior Court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (2007). In particular, we exercise plenary review of an order granting or denying a JNOV motion. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). When reviewing such motions, we apply the same standard as the Superior Court should have utilized. *Id.*

■ "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability." *Id.* A JNOV should be granted only when "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id.* "In performing this narrow inquiry, [trial courts and appellate courts] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [their] own version of the facts for that of the jury." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

The trial court's decision regarding admissibility of evidence, however, is reviewed only for abuse of discretion. *Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001). Additionally, we review a trial court's findings of fact only for clear error. *Daniel*, 49 V.I., at *329.

### B. The Trial Court Abused Its Discretion When It Excluded the Photographs Illustrating the Damage to Corriette's Vehicle

During a pretrial conference, Morales argued to the trial court that the photographs depicting the damage to Corriette's vehicle were not relevant because the parties had already settled the issue of property damage and because no expert testimony linked the damage depicted in the photographs to Corriette's personal injuries. In support, Morales submitted a letter from a purported accident reconstruction specialist from Virginia who stated that photographs of damage to a car will not help untrained persons estimate the speed at which Morales was driving.[2] (Supplemental App. at 47.) The trial judge ultimately granted Morales's motion to exclude the photographs because he found that their prejudicial effect outweighed their probativeness on the issue of personal damages.

---

[2] This letter was not admitted into evidence at trial.

Corriette argues that the trial court erred in excluding the photographs of his vehicle because they are admissible to show the nature and extent of his personal injuries. Many jurisdictions agree with Corriette's argument on this issue. *See, e.g., Brenman v. Demello*, 191 N.J. 18, 921 A.2d 1110, 1120 (2007); *Mason v. Lynch*, 388 Md. 37, 878 A.2d 588, 595 (2005) ("Along with other reasons for relevancy in particular cases, such photographs have also been admitted to allow the jury to visualize the nature of the occurrence, *i.e.,* . . . the extent of the accident." (internal quotations omitted)); *O'Brien v. Barretta*, 843 N.Y.S.2d 399, 44 A.D.3d 731, 732 (N.Y. App. Div. 2007) ("The trial court providently exercised its discretion in admitting both the photographs and the testimony, as both were relevant to show the force of impact, and therefore, 'help[ed] in determining the nature or extent of injuries . . . .' "); *Cancio v. White*, 297 Ill. App. 3d 422, 697 N.E.2d 749, 756 (Ill. App. 1998) ("[T]he photos of plaintiffs' vehicle were relevant to the nature and extent of plaintiffs' damages. They were relevant because they showed little or no damage, which is something the jury could consider in determining what, if any, injuries [plaintiff] sustained as a result of the accident.").

The essential debate over the admission of such photographic evidence, however, has been whether the photographs must be supported by expert testimony. Contrary to the holdings of other jurisdictions, Delaware appeared to establish a bright line rule holding that such photographs are inadmissible without expert testimony. *See Davis v. Maute*, 770 A.2d 36, 40 (Del. 2001) ("Absent such expert testimony, any inference by the jury that minimal damage to the plaintiff's car translates into minimal personal injuries to the plaintiff would necessarily amount to unguided speculation.").

Other jurisdictions have refused to adopt a bright line approach and hold, instead, that such photographs may be admissible, in the trial judge's discretion, to show the extent of a plaintiff's injuries without expert testimony. *See, e.g., Brenman*, 921 A.2d at 1120 ("We cannot subscribe to the limits of *Davis*'s logic. In the main, the fundamental relationship between the force of impact in an automobile accident and the existence or extent of any resulting injuries does not necessarily require 'scientific, technical, or other specialized knowledge' in order to 'assist the trier of fact to understand the evidence or to determine a fact in issue' . . . expert proofs . . . address the weight to be given to photographs of impact, not their admissibility."); *Mason*, 878 A.2d at 595

("[T]he Court of Special Appeals alternately appeared to agree *with the majority of courts* which have held that the admission of such photographs is within the trial judge's discretion. We agree . . . . The holding of the Delaware court in *Davis* is not consistent with traditional Maryland law concerning the admission of photographic evidence, and we decline to follow the *Davis* opinion." (emphasis added)); *Marron v. Stromstad*, 123 P.3d 992, 1009 (Alaska 2005) ("[W]e decline to adopt the rigid approach represented by [Davis]. We are unaware of any other jurisdiction which has adopted a rule that collision evidence is *per se* inadmissible without expert testimony, and we decline to do so. The trial court properly has the discretion to weigh the prejudicial and probative value of photographs and other evidence of the severity of an accident."); *Murray v. Mossman*, 52 Wn.2d 885, 329 P.2d 1089, 1091 (Wash. 1958) (affirming admission of photographs of accident scene for the limited purpose of showing the force of the impact that caused plaintiff's whiplash injury); *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 794 N.E.2d 875, 881 (Ill. App. 2003) ("[W]e are rejecting a bright-line rule . . . We do not hold that expert testimony must always be required for such photographic evidence to be admissible.") (ultimately upholding trial court's use of discretion to require expert testimony).[3]

---

[3]     *See also Maybaum v. Rakita*, No. 80613, 2002 Ohio App. LEXIS 5359, at *9 (Ohio App. Oct. 3, 2002) ("[I]n no way is this court suggesting that expert testimony is always necessary in order for photographic evidence depicting vehicle damage to be admissible at trial. Generally, photographs showing the extent of damage to vehicles are generally relevant, subject to the provisions of [Rule] 403, to proving the extent of injury suffered by a person inside the vehicle . . . To suggest that expert testimony is required as a matter of law not only flies in the face of established precedent, but is ill-advised."); *Flores v. Jenison*, No. CV010278648S, 2004 Conn. Super. LEXIS 1622, at **3-4 (Conn. Super. June 23, 2004) (court declined to follow *Davis,* affirmed the trial court's decision to allow photographs without expert testimony, and held that "evidence of speed, physical impact, and the like is admissible as relevant to the probable extent of personal injuries" (citing *Berndston v. Annino*, 177 Conn. 41, 42, 411 A.2d 36, 38 (Conn. 1979)); C.C. Marvel, Annotation, *Admission of Liability as Affecting Admissibility of Evidence as to the Circumstances of Accident on Issue of Damages in a Tort Action for Personal Injury, Wrongful Death, or Property Damage*, 80 A.L.R. 2D 1224 (1961). We recognize that *Flores* and *Maybaum* are unpublished opinions. We nonetheless cite to them in the above survey of case law not for precedential value in this jurisdiction but for their persuasive value. *See generally Mason*, 878 A.2d at 600 (surveying case law on same issue and citing to *Flores*).

■ In response to such criticism, the Delaware Supreme Court sought to clarify *Davis's* apparent bright line rule. In *Eskin v. Carden*, the court held:

> *Davis* does not hold that photographs of the vehicles involved in an accident may never be admitted without expert testimony about the significance of the damage to the vehicles shown in the accident and how that damage may relate to an issue in the case. *Davis* has been misinterpreted as a bar to the admission of photographs without expert testimony. It was only the disingenuous reference to a "fender bender" — after a trial judge's express ruling forbidding what that phrase implied — that prompted our holding. *Davis* should not be construed broadly to require expert testimony in every case in order for jurors to be permitted to view photographs of vehicles involved in an accident.
>
> In short, *Davis* should not be limited to its facts, recognizing that there may be many helpful purposes for admitting photographs of the vehicles involved in an accident where the case does not require supporting expert opinion.

842 A.2d 1222, 1233 (Del. 2004). Accordingly, our research reveals that the majority of those jurisdictions addressing this issue have uniformly held that such photographs are relevant to the personal injuries sustained in a vehicle accident and are admissible, in the discretion of the trial judge, without expert testimony. *See Mason*, 878 A.2d at 598 ("[O]ther courts have addressed the argument [made by the *Davis* court] and rejected it."); *Bishop v. Dale Jessup, Inc.*, No. 4:05CV397, 2006 U.S. Dist. LEXIS 9162, at *5 (E.D. Mo. March 8, 2006) ("Even with the clarification in *Eskin, Davis*, is the minority approach."); 8 AM. JUR. 2D *Automobiles* § 1177 ("[O]ther jurisdictions have declined to adopt [the *Davis* rule], holding that such evidence may be admissible without supporting expert testimony, and that admission rests in the discretion of the trial court, weighing the probative value of the evidence against its potential for prejudice."). Therefore, it is the majority rule that photographs depicting damage to a vehicle are relevant to the issue of personal injuries and are generally admissible without expert testimony. Guided by title 1, section 4 of the Virgin Islands Code[4], we adopt this ma-

---

[4] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and

jority rule as the rule of decision in this case. *See Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 498-499 (V.I. 2008) (noting that the Legislature intends the majority rule to govern in the absence of specific legislation).

In excluding the photographs, the trial judge in this case stated that the jury "would be . . . speculating" unless Corriette is "able to show, either by testimony as to how fast the defendant was traveling, either from him or someone who was traveling behind him, or someone that was able to come to court, for example, an accident reconstruction expert." (Trial Tr. vol. I, 16, Apr. 7, 2003). The trial judge appeared to be principally concerned that without expert testimony the jury may not realize that major damage to a vehicle does not necessarily result in serious injuries.[5] Rather than excluding the photographs, however, the trial court could have issued an appropriate cautionary instruction to the jury.[6] *See Brenman*, 921 A.2d at 1121 ("[W]here photographs of vehicle damage are admitted, the trial judge should remind the jury that some bad accidents result in little injury, that some minor accidents result in serious injury, and that, therefore, the level of damage to a vehicle is but one factor to be considered, along with all of the other evidence, in determining the level of plaintiff's injuries resulting from the accident.").

█ As the above survey of case law illustrates, photographs showing damage to a plaintiff's vehicle are relevant[7] to the nature and extent of a plaintiff's personal injuries, even where property damage is no longer an issue in the case. *See Bishop*, 2006 U.S. Dist. LEXIS 9162 at *7 ("Even if there is not a perfect correlation between property damage and personal injury in automobile accidents, it does not mean that property damage is not relevant."). From such photographs, a jury can infer the relationship

---

applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4.

[5] Specifically, the judge stated that "this vehicle . . . could have shown less damage, and Mr. Corriette could have sustained the exact same amount of physical injury." (Trial Tr. vol. I, 18).

[6] *See* 5 V.I.C. § 776 ("When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly"); *see also* FED. R. EVID. 105.

[7] *See* 5 V.I.C. § 771(2) (" 'Relevant evidence' means evidence having any tendency in reason to prove any material fact."); *see also* FED. R. EVID. 401.

between the alleged severity of a plaintiff's personal injuries and the physical damage to his vehicle. Additionally, as demonstrated above, a jury may draw such an inference without the assistance of expert testimony.[8] Nevertheless, when determining whether to admit or exclude such photographs, a trial court must, in the exercise of its discretion, balance the probative value of the photographs against any possible prejudice to the opposing party. A trial court's decision to exclude evidence for prejudice will not be reversed on appeal unless this Court finds that decision to be "arbitrary and irrational." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 169 (3d Cir. 2001).

According to title 5, section 885 of the Virgin Islands Code, "the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . . create substantial danger of undue prejudice or of confusing the issues or of misleading the jury . . . ." 5 V.I.C. § 885; *see also* FED. R. EVID. 403. In this case, the trial judge stated that the photographs were "relevant to a point . . . but . . . highly prejudicial." "Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Blyden*, 27 V.I. 381, 964 F.2d 1375, 1378 (3d Cir. 1992) (internal quotations omitted).

Despite declaring the photographs prejudicial, the trial judge failed to elaborate on the particular reason for the prejudice. Moreover, as the rule of evidence requires, the probativeness of the photographs must be "substantially outweighed" by the danger of unfair prejudice. *See* 5 V.I.C. § 885. "When evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *U.S. v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) (discussing prejudice under Federal Rule of Evidence 403). Without any suggestion as to the specific prejudice that the court found, we are unable to discern whether the high probative value of Corriette's photographs was substantially outweighed in this case. The trial court's wholesale exclusion of the photographs appears to have stemmed from

---

[8] It is noteworthy that the cases which raise the most concern for unfair prejudice are those where the defendant sought to admit photographs depicting minimal damage to the plaintiff's vehicle in order to show little or no personal injury to the plaintiff. *See, e.g., Brenman*, 921 A.2d at 1113; *Davis*, 770 A.2d at 40; *Cancio*, 697 N.E.2d at 756. In contrast, in the present case, the photographs showed severe damage to the plaintiff's Volvo, which could be evaluated by a jury in considering the gravity of the plaintiff's injuries.

the erroneous belief that, as was argued by Morales, such photographs are never admissible without expert testimony. However, as our holding herein and the law of other jurisdictions clearly establish, such photographs are admissible without expert testimony unless they are found unduly prejudicial.[9] Accordingly, we conclude that the trial court's decision to exclude the photographs of Corriette's vehicle was "arbitrary and irrational," and we, therefore, hold that the court abused its discretion in excluding the photographs.[10]

## C. The Trial Court Erred When It Set Aside the Portion of the Jury Award Relating to Future Pain and Suffering

At the conclusion of Corriette's case, Morales moved the trial court for a directed verdict on the issue of future pain and suffering, but the trial judge reserved his ruling at that time. After the jury returned an award in favor of Corriette, including $20,000.00 for future pain and suffering, Morales renewed his motion. In granting the JNOV motion, the trial court ultimately concluded that Corriette failed to present sufficient evidence that he was likely to endure future pain and suffering.

According to the RESTATEMENT (SECOND) OF TORTS[11], "[w]hen a person has suffered physical harm that is more or less permanent in nature . . . he is entitled to recover damages not only for harm already suffered, but also for *that which probably will result in the future*." RESTATEMENT (SECOND) OF TORTS § 912 cmt. e (1979) (emphasis added). When it comes to computing the damages, the Restatement clarifies the type of evidence that a plaintiff must present:

---

[9] At least one jurisdiction appears to hold that such photographs may never be excluded under balancing analysis articulated in Federal Rule of Evidence 403. *See Bishop*, 2006 U.S. Dist. LEXIS 9162 at *7 ("[T]he photographs should not be excluded under FED. R. EVID. 403. Evidence of property damage is probative of the extent of personal injury, and it is not even outweighed, let alone substantially outweighed, by any danger of unfair prejudice.").

[10] The improper exclusion of the photographs was compounded by the fact that the trial court also limited the extent to which Corriette could testify to the damage to his car. The trial court stated:

> "[L]ike I said, his describing what happened to his car is fine, to a point, of course. I'm not goin' let you, say, bring in a mechanic's report to say what was broken or what wasn't. But he is entitled to explain his car was struck from the rear, his car sufferred [sic] damages to the rear of his vehicle[, a]nd his vehicle was knocked into another vehicle."

(Trial Tr. vol. I, 19-20).

[11] *See* n. 4, *supra*.

For harm to body, feelings or reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded *without proof of amount other than evidence of the nature of the harm* ... The discretion of the judge or jury determines the amount of recovery, *the only standard being such an amount as a reasonable person would estimate as fair compensation.* In these cases the trier of fact can properly award substantial damages as compensation *for harms that normally flow from the tortious injury even without specific proof of their existence,* such as pain from a blow or humiliation from a scar. Evidence to prove that the harm is greater or less than that which ordinarily follows is admissible. *The most that can be done is to note such factors as the intensity of the pain or humiliation, its actual or probable duration and the expectable consequences.* Since these factors are all indefinite (*see* § 905), it is impossible to require anything approximating certainty of amount even as to past harm.

RESTATEMENT (SECOND OF TORTS) § 912 cmt. b. (emphasis added).

In granting Morales's JNOV motion and setting aside the award for future pain and suffering, however, the trial court held that "the evidence that [Corriette] offered is a mere scintilla of evidence." (J. 3.) In explaining its holding, the trial court stated:

The bulk of the questionnaire relied upon by Plaintiff involved a series of questions that did not concern the injury that Plaintiff sustained in the car accident. Plaintiff has stopped receiving treatment for his back, and his treating physician noted in 2001 that "no further care is anticipated at this time." The statements as to discomfort and reduced range of motion that Plaintiff relies upon do not amount to future pain "which probably will result in the future" as required by the Restatement. The scintilla of evidence as to Plaintiff's future pain, against the weight of evidence suggesting he has been able to work full-time as a painter and will receive no further treatment for his injuries, does not support an award for future pain.

(J. 4.)

■ As the Restatement demonstrates, Corriette need only offer evidence "of the nature of the harm" for a jury to properly award him future pain and suffering. *See* RESTATEMENT (SECOND) OF TORTS § 912 cmt. b. Specific proof of Corriette's pain and suffering is not required if

the complained of pain in his neck, shoulders, and back was the type that "normally flow[s] from the tortious injury." *Id.* The jury in this case was presented with the testimonies of Corriette, his wife, his treating physician, his medical expert, and even Morales's expert, each of which directly or indirectly established the type of future pain likely to result from the whiplash injury.

Specifically, Dr. Williams, Corriette's treating physician, testified that "[d]ue to the nature of the injury and the mild degeneration of the cervical spine, it is likely that [Corriette] may have periodic flare-ups as he ages and depending on physical activity." (Trial Tr. vol. II, 180-81, Apr. 8, 2006). He also stated that "[s]car tissue is not as flexible as a muscle that hasn't been injured, so range of motion may be restricted depending on activity." *Id.* Moreover, he noted that "no injury ever goes back to a hundred percent of what it was before . . . [s]o in many cases it doesn't take much to exacerbate the condition as it existed before." *Id.* Additionally, Dr. Jett, Corriette's expert witness, testified that Corriette will "continue to need treatment for the rest of his life" and that, since there is no way to get rid of scar tissue once it has formed, Corriette will "have continued and chronic pain." (Trial Tr. vol. I, 62, 63). In addition, both Corriette and his wife testified about the reduced range of motion he has suffered, his intermittent pain, and the change in the types of activities he has been able to perform since the accident. Even Morales's expert witness, Dr. Fernandez, testified that scar tissue can result from the type of injury sustained by Corriette, and he confirmed that scar tissue can never be removed. However, Dr. Fernandez stated that, in his opinion, Corriette did not suffer permanent damage.

Although the evidence showed that Corriette worked full-time since one month after the accident, stopped receiving treatment for his injuries, and does not take pain medication, the jury also had before it evidence that was favorable to Corriette on these issues. Specifically, Corriette testified that he cannot take medication because of his bad stomach, but he takes bush baths and receives frequent massages from his wife to ease his pain. Corriette also testified that, although he works full-time, he does so in pain and must continue to do so because he is the only breadwinner in his family.

It is significant that, in granting the JNOV motion, the trial court failed to mention the favorable testimony of Dr. Williams and Dr. Jett. Moreover, the trial court clearly discounted Corriette's own testimony as to why he works and does not take medication. When ruling upon the

JNOV motion, the trial court should have viewed the evidence in the light most favorable to Corriette, the nonmovant, and given him "the advantage of every fair and reasonable inference." *Lightning Lube*, 4 F.3d at 1166. Most importantly, the trial court contravened the JNOV standard because it clearly weighed the evidence, determined the credibility of the witnesses, and substituted its own finding of facts for that of the jury's. *Marra*, 497 F.3d at 300. In so doing, the court invaded the province of the jury.

Given all of the evidence offered by Corriette, we hold that Corriette offered more than a mere "scintilla" of evidence establishing the nature of the harm likely to cause him future pain and suffering. Accordingly, the trial court erred when it granted Morales's motion and set aside the jury's $20,000.00 award.

## III. CONCLUSION

The trial court abused its discretion in excluding the photographs of Corriette's vehicle because such photographs are admissible to show the force and extent of a plaintiff's personal injuries absent a finding of substantial undue prejudice. Additionally, because the trial court improperly weighed the evidence, determined the credibility of the witnesses, and substituted its own version of the facts for that of the jury, the court erred when it granted Morales's JNOV motion and set aside the $20,000.00 jury award for future pain and suffering. Accordingly, we vacate the Superior Court orders excluding the photographs of Corriette's vehicle and granting the JNOV motion, and we remand this case for a new trial[12] on the issue of damages consistent with our holdings herein.[13]

---

[12] Corriette, rather than merely seeking reinstatement of the $20,000.00 jury award for future pain and suffering, requests a new trial on the issue of damages at which he may present all relevant evidence including the photographs of his vehicle.

We note that a new trial on the issue of liability is unwarranted in this case, because Morales does not contend on appeal that the finding of liability was in error. In fact, Morales does not challenge the amounts awarded by the jury for past medical expenses and for past and present pain and suffering. Moreover, because the jury has already found Morales liable even without the admission of the photographs, their admission on remand would impact only the amount of damages awarded to Corriette. Accordingly, on remand, the new trial shall be limited to the issue of damages. *See generally Springfield Crusher, Inc. v. Transcontinental Ins. Co.*, 6 V.I. 38, 372 F.2d 125, 127 (3d Cir. 1967) (reversing trial court's admission of certain testimony but holding that new trial need only be held on the issue of damages).

[13] Morales additionally argues that, because the record does not include "any evidence" of Corriette's life expectancy, a jury could not have properly awarded him damages for future

pain and suffering. Specifically, Morales quotes from the Restatement which states that "[i]n the case of permanent injuries or injuries causing death, it is necessary, in order to ascertain damages, to determine the expectancy of the injured person's life at the time of the tort." RESTATEMENT (SECOND) OF TORTS § 924 cmt. e. The Restatement also provides that mortality tables are one "permissible" type of evidence that can be used to establish life expectancy. In this case, Corriette requested several times that the trial court take notice of the life expectancy tables he submitted. The court, however, never ruled upon these requests. Ultimately, the court instructed the jury that it "may consider Mr. Corriette's age at the time of his accident, his usual activities, and his life expectancy in determining the amount of damage to which he is entitled for the remainder of his life."

Some jurisdictions hold that mortality tables and expert testimony regarding a plaintiff's life expectancy are not required. *See, e.g., Tabor v. Miller*, 389 F.2d 645, 647 (3d Cir. 1968) (noting that Pennsylvania does not require tables or expert testimony when a plaintiff seeks damages for future pain and suffering); *O'Toole v. U.S.*, 242 F.2d 308 (3d Cir. 1957) (noting that in Delaware life tables are *a guide* for the court). Because we are remanding this case for a new trial on damages, we need not decide here whether mortality tables are required when a jury is presented with evidence of a plaintiff's age, his past and present health, his usual activities, and other such evidence.