**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3355-18T3

ELIZABETH E. HARRINGTON,

     Plaintiff-Appellant,

v.

SOUTH CITY PRIME MONT-
VALE, LLC a/k/a SOUTH CITY
PRIME a/k/a SOUTH CITY PRIME
RESTAURANT t/a FIRE & OAK
d/b/a FIRE & OAK MONTVALE,
GRAND PRIX MONTVALE, LLC,
INK LESSEE, LLC; MARRIOTT
INTERNATIONAL, INC. d/b/a/
COURTYARD MARRIOT a/k/a
COURTYARD MONTVALE,
ISLAND HOSPITALITY MAN-
AGEMENT, LLC, and MERCURY
NATIONAL CONSTRUCTION
CORPORATION,

     Defendants-Respondent.

_____

Argued October 1, 2020 – Decided December 17, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2127-16.

James A. Kassis argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; James A. Kassis and Sandra Calvert Nathans, of counsel and on the briefs).

Kevin J. Conyngham argued the cause for respondents (Zimmerer, Murray, Conyngham & Kunzier, attorneys; Kevin J. Conyngham of counsel; Kevin J. Conyngham and Sidney E. Goldstein, on the brief).

PER CURIAM

In this personal injury action, plaintiff Elizabeth Harrington appeals from the February 7, 2019 judgment issued after a jury returned a no-cause verdict in favor of defendant South City Prime, Montvale, LLC (South City Prime). Plaintiff, after having dinner at the Fire & Oak restaurant (Fire & Oak), fell when exiting a raised booth.[1] On appeal, plaintiff argues the verdict must be set aside because the jury was allowed to consider impermissible evidence including: (1) plaintiff's alcohol consumption before the fall; (2) the safety history of the elevated booths; and (3) the role of design professionals in the construction of the booths. Additionally, plaintiff argues the trial court erred in denying her motion for a new trial because the verdict was against the weight of

---

[1] South City Prime is the holding company that owns and operates Fire & Oak.

A-3355-18T3

the evidence; and portions of witness testimony were barred. We need not consider each argument presented by plaintiff because, having considered the record and applicable law, we conclude there was irrelevant and highly prejudicial evidence presented to the jury that may well have tainted the verdict, necessitating a reversal and retrial.

We discern the following facts from the record. On January 11, 2016, plaintiff met a friend for dinner at Fire & Oak. The pair sat in the bar and lounge area of the restaurant. Seating in the lounge area includes elevated banquette style booths constructed on top of a twelve-and-a-half-inch platform. Patrons must step up onto the platform to enter the booths and step down to exit. Lighting in the lounge is set to a lower level for dinner service than during lunch service.

Plaintiff and her friend dined for approximately three-and-a-half hours, during which time plaintiff consumed two glasses of wine. When they finished their meal, plaintiff attempted to exit the booth and fell. She sustained an intertrochanteric fracture of her right hip, which would eventually require two surgeries to repair. Patrick Langford, the manager on duty, offered assistance after the fall. The following day Langford prepared an incident report describing the event; the report made no mention of any signs of intoxication.

On March 7, 2016, plaintiff filed a complaint alleging the defendants had allowed a dangerous condition to exist on the premises which caused her injuries. Additional defendants were added through amendments on April 5, 2016, and March 16, 2018.

The parties disputed the admissibility of plaintiff's alcohol consumption on the night of the fall. The defense argued the evidence was relevant to the narrative of events that took place that night.[2] Plaintiff, on the other hand, argued the evidence was irrelevant, highly prejudicial, and barred by caselaw. The trial court ruled evidence of plaintiff's alcohol consumption was admissible for the sake of a complete narrative:

> [THE COURT]: I may sanction somebody if people know information they are not telling me. On the basis of what I heard, this not a difficult decision. The fact that your client had dinner there and had two cabernets is not prejudicial. It's, in effect, for completeness of what they were doing there at the time.
>
> I didn't see anything in the submitted reports that in any way over a period of time when she was in the bathroom or got to the bathroom, or being brought out by wheelchair to the ambulance or whatever, that anybody

---

[2] On appeal defendant argues, for the first time, plaintiff's alcohol consumption was used to impeach her credibility. Defendant suggests the evidence showed it was unlikely plaintiff did not get up to use the bathroom after consuming two glasses of wine and remaining seated for such a long time. (Db16). The argument, however, was not raised below and therefore we do not consider it. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

suggested that she was bagged out of her mind or drunk or whatever it may be.

The simple fact that she had two drinks over a three-and-a-half[-hour] time period, that is not prejudicial enough to remove it from the case. And, I'm going to allow it.

Defense counsel seized the opportunity and referred to plaintiff's alcohol consumption in his opening statement:

[DEFENSE COUNSEL]: They sat there for three and a half hours, and had dinner. Two glasses of, I believe [cabernet]. And for three and half hours, they chatted and enjoyed their dinner.

Plaintiff was the first to testify. During cross-examination, defense counsel questioned her about her alcohol consumption prior to the fall:

Q: Now, you were at the Fire & Oak for approximately three and half hours; is that right?

A: Yes.

Q: You had something to drink that night?

A: I had a couple glasses of cabernet.

Q: All right, did you have anything else; water or anything else, beverages?

A: There was water on the table but –

Q: How many waters did you have?

A: I didn't have any. I don't – I didn't drink a lot of water.

Q: So the only thing you had to drink were the two cabernets, that was it?

A: Yes.

Plaintiff then called the manager on duty at Fire & Oak on the night of the fall, Patrick Langford.[3] Pertinent to this appeal, Langford testified he observed plaintiff immediately after the fall and did not notice any signs of intoxication. The day after the fall, he prepared a memo describing the incident and included all of the information he felt was important; the memo did not indicate plaintiff had bloodshot eyes, slurred her speech, or exhibited any other signs of intoxication.

Defendant called a single witness, the managing partner of South City Prime, Graeme Dorras. Dorras's testimony related events regarding construction of the restaurant as well as the safety history of the booths. He also testified that the commercial landlord played no role in the construction, did not inspect

---

[3] John Tesoriero, a civil engineer; Dr. Andrew Brief, a board-certified orthopedic surgeon; and Glenn O'Neill, the friend that accompanied plaintiff on the night of the fall, also testified on plaintiff's behalf.

the premises, and has maintained zero control over the restaurant since its opening.[4]

On January 14, 2019, the jury returned a no-cause verdict in favor of defendant. By vote of five to one, the jury found Fire & Oak was reasonably safe on the night of the fall. On March 1, 2019, plaintiff moved for a new trial, based on a number of allegedly incorrect evidentiary rulings. On March 15, 2019, the trial court denied the motion. This appeal ensued.

An appellate court reviews a trial court's evidentiary rulings for abuse of discretion. Brenman v. Demello, 191 N.J. 18, 31 (2007). Thus, an appellate court will not disturb a trial court's evidentiary rulings unless they are "so wide off the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)). However, an appellate court will review questions of law de novo. Balsamides v. Protameen Chem., Inc., 160 N.J. 352, 372 (1999).

Trial errors that were brought to the attention of the court are reviewed for harmful error. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing

---

[4] At the close of defendants' case-in-chief, defense counsel successfully moved to dismiss all defendants excluding South City Prime.

A-3355-18T3

an unjust result . . . ." R. 2:10-2.  Thus, if a trial judge is found to have abused his or her discretion, or otherwise erred, the appellate court must then determine whether that error amounted to harmful error, provided the alleged error was brought to the trial judge's attention.  See State v. Prall, 231 N.J. 567, 581 (2018) ("Our review of the evidentiary determinations cannot end our analysis when we find an abuse of discretion; rather, we must then determine whether any error found is harmless or requires reversal.").

"The standard governing an appellate tribunal's review of a trial court's action on a new trial motion is essentially the same as that controlling the trial judge."  Dolson v. Anastasia, 55 N.J. 2, 7 (1969) (citing Hager v. Weber, 7 N.J. 201, 212 (1951)).

> A new trial may be granted to all or any of the parties and as to all or part of the issues on motion made to the trial judge. . . . The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.
>
> [R. 4:49-1(a).]

Plaintiff argues we should reverse the no-cause verdict based on the court's alleged error in permitting evidence of, among other things, her alcohol consumption on the night of her fall.  Before the trial court, defense counsel

represented that introduction of the evidence was not to prove plaintiff was intoxicated. When counsel was questioned how he intended to use the evidence if not to suggest intoxication, he refused to answer arguing he should not be forced to reveal his trial strategy. The trial court first referenced the fact there was no evidence of intoxication in the record, then proceeded to hold two glasses of wine over a three-and-a-half-hour period was "not prejudicial enough to remove it from the case."

In <u>Gustavson v. Gaynor</u>, we held that evidence a defendant consumed alcoholic beverages prior to his involvement in an automobile accident "is by itself insufficient to warrant an inference that the [defendant-]driver was intoxicated and that the intoxication was of such a degree as to render him unfit to drive at the time of the accident." 206 N.J. Super. 540, 545 (App. Div. 1985). We held that to admit evidence of drinking alcohol to establish the negligent operation of a motor vehicle, supporting evidence must be presented "from which the trier of the fact may reasonably conclude that the drinking affected the safe operation of the vehicle." <u>Id.</u> at 544-45. We also found applicable the following "general rule":

> [During a trial,] questions cannot be asked which intimate to the jury that a party was intoxicated at the time of [an] accident unless there is supporting evidence . . . ; in the absence of supporting evidence,

testimony concerning the drinking of intoxicants should be stricken, and under certain circumstances, may constitute reversible error notwithstanding a sustained objection.

[Id. at 545 (quoting Ballard v. Jones, 316 N.E.2d 281, 286 (Ill. App. Ct. 1974)).]

Here, defendant sought admission of evidence plaintiff consumed two glasses of wine prior to the incident, but failed to proffer any other evidence supporting a finding that plaintiff's alleged consumption of wine resulted in intoxication or impairment, or that the alleged drinking affected her in any manner. To the contrary, Langford testified he observed and interacted with plaintiff shortly after the fall and included all relevant information in his incident report. Langford testified he did not observe any signs of intoxication and the report made no reference to alcohol playing any role in the fall. Thus, as conceded by defendants, there is no evidence in the record that would support an inference plaintiff was impaired by alcohol at the time of her fall.

We reject defendant's claim a different result is required by our decision in Black v. Seabrook Assoc., Ltd., where, in a wrongful death and survivorship action, we determined the trial court erred by excluding testimony concerning the decedent's consumption of alcohol in the hours preceding the incident that resulted in his death. 298 N.J. Super. 630, 635 (App. Div. 1997). In Black, the

10

decedent suffered a severed artery when he punched the door to his apartment to gain entry because the door "was stuck." Id. at 632. Testing at the hospital where the decedent was treated and died revealed a .143 blood alcohol content, and a later test revealed a .11 blood alcohol content. Id. at 633. Another test showed "a trace of cocaine metabolite in [the] decedent's urine." Ibid.

The trial court excluded testimony concerning the decedent's use of alcohol based on a finding "there was insufficient supplemental evidence of alcohol to admit such testimony" as required by Gustavson. Ibid. We reversed the trial court's decision, and determined evidence establishing the extent to which the decedent's "judgment and/or coordination were impaired" by his consumption of alcohol was "a proper subject for the jury to consider," and could be established by testimony from two witnesses and "the blood alcohol content results of decedent's blood serum analysis." Id. at 636-37. We further found that evidence satisfied the Gustavson "supplemental evidence standard." Id. at 637.

Here, in contrast, defendant offered no supplemental evidence suggesting plaintiff's intoxication. There was no testimony concerning the volume of the wine glasses at Fire & Oak. There was no testimony about plaintiff's weight, nor any testimony to establish when during the three-and-a-half-hour long

dinner the wine was consumed. There was no evidence of plaintiff's blood alcohol content, nor expert testimony to establish how under all the foregoing factors she may have been impaired. There was no lay testimony evidencing any belligerent or otherwise unusual behavior to suggest plaintiff may have been impaired. Indeed, defendant's own employee testified that plaintiff showed no signs of impairment, and he did not include alcohol consumption as a contributing factor of the accident in his incident report.

We conclude the court's ruling admitting the alcohol evidence was clearly mistaken. Gustavsen dictates that in the absence of supplemental evidence of intoxication, evidence of alcohol consumption is inadmissible. 206 N.J. Super at 545. That is so because evidence of alcohol consumption prior to an accident is inherently very prejudicial. Because other indicia of intoxication were indisputably absent in this case, the jury was improperly allowed to speculate about the significance of the evidence that plaintiff consumed two glasses of wine at some unspecified time before her fall. We are unable to state with any degree of confidence that the admission of the evidence did not taint the verdict or otherwise result in a "miscarriage of justice under the law." Dolson, 55 N.J. at 7.

Because we find reversal is warranted based on the admission of the alcohol evidence, the remaining issues on appeal are moot and will not be addressed.

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3355-18T3