**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1106-19

RHODA A. ROGERS,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

NATHANIEL P. GRAY,
LESLIE G. GRAY,

       Defendants-Appellants/
       Cross-Respondents.

_____

Argued February 1, 2021 – Decided April 30, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0690-14.

William P. Krauss argued the cause for appellant/cross-respondent (Connell Foley, LLP, attorneys; William P. Kraus and Evan D. Haggerty, of counsel and on the brief; Mary A. Chen, on the brief).

James C. Mescall argued the cause for respondent/cross-appellants (Mescall Law, PC, attorneys; James C. Mescall, of counsel and on the briefs; Maximilian J. Mescall, on the briefs).

PER CURIAM

Defendant Nathaniel Gray[1] in this automobile negligence case appeals from a January 29, 2019 trial judgment in favor of plaintiff and an order entered by the trial judge denying defendant's motion for a new trial. Defendant also appeals from an October 4, 2019 order entered by another judge denying his motion to depose plaintiff's attorney relating to fees and granting plaintiff's motion for reconsideration to increase the award of costs, fees, and interest. Plaintiff cross-appeals from the trial judge's order awarding costs, claiming the judge should have included expert witness fees. After carefully reviewing the record in view of the parties' arguments and governing legal principles, we affirm the trial judgment, the denial of defendant's motion for a new trial, and the denial of expert witness fees substantially for the reasons set forth in the trial judge's thirty-six-page written opinion. We also affirm the order entered by the reconsideration motion judge for the reasons set forth in his oral opinion.

---

[1] Although co-defendant Leslie Gray is also formally named in the notice of appeal, both parties' briefs refer only to Nathaniel Gray, who operated the car during the incident in question.

A-1106-19

# I.

We presume the parties are familiar with the procedural history and relevant facts, which need only be briefly summarized. This case arises from a rear-end motor vehicle accident that occurred on February 15, 2013. In January 2014, plaintiff filed a complaint alleging permanent injuries to her neck and back as a result of the accident. A complaint filed by a passenger in plaintiff's vehicle was consolidated with this case. The passenger's matter settled before this case went to trial.

In April 2015, plaintiff made an offer of judgment for $35,000. That offer was rejected. In March 2018, the parties concluded discovery and proceeded to arbitration. On April 3, 2018, the arbitrator awarded plaintiff $17,500 in damages. On April 11, 2018, plaintiff filed an offer of judgment for $20,000. Defendant did not accept this second offer. There is no indication in the record that either party sought to confirm this award, nor does the record indicate which party filed for a trial de novo from the arbitration proceeding.

The ensuing jury trial spanned four non-consecutive days in October 2018. Defendant stipulated to liability for the accident. Accordingly, the jury was charged only with determining whether plaintiff was permanently injured within

the meaning of N.J.S.A. 39:6A-8(a),[2] and if so, the amount of damages. The jury found plaintiff suffered permanent injury and awarded plaintiff $99,360.

On January 9, 2019, the trial judge denied defendant's motion for a new trial and entered final judgment in favor of plaintiff. With respect to plaintiff's

[2] In relevant part, N.J.S.A. 39:6A-8(a), commonly known as the "verbal threshold" provision, provides:

> Every owner, registrant, operator or occupant of an automobile to which section 4 of [N.J.S.A. 39:6A–4], personal injury protection coverage, . . . regardless of fault, applies, and every person or organization legally responsible for his [or her] acts or omissions, is hereby exempted from tort liability for non-economic loss to a person who is subject to this subsection and who is either a person who is required to maintain [the coverage mandated by this act], or is a person who has a right to receive benefits under section 4 of [N.J.S.A. 39:6A–4], as a result of bodily injury, arising out of the ownership, operation, maintenance[,] or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or <u>a permanent injury within a reasonable degree of medical probability</u>, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
>
> [emphasis added.]

request for costs and fees, the trial judge noted in her written opinion that plaintiff's attorney fee certification included questionable entries and relied on reconstructed billing records that were not accompanied by adequate supporting documentation. The trial judge therefore reduced plaintiff's request for counsel fees by 50%. The trial judge also declined to award expert witness fees. The trial judge ultimately awarded to plaintiff $34,440 for counsel fees, $426.55 for litigation costs, and $5,561 for interest.

Plaintiff timely filed a motion for reconsideration seeking to increase the amount awarded for counsel fees and litigation costs.[3] Defendant opposed this motion and cross-moved to compel deposition of plaintiff's counsel in connection with counsel's certification of costs. Because the trial judge was no longer available, the vicinage civil presiding judge (motion judge) decided these motions instead. The motion judge reviewed approximately 2,500 pages of documentation and on October 4, 2019, granted plaintiff's motion for

---

[3] We note plaintiff's motion for reconsideration did not include a request to amend the award to include expert witness fees. In support of the reconsideration motion, plaintiff submitted counsel's entire case file—comprised of approximately 2,500 pages—to address the trial judge's concerns about the lack of supporting documentation. Although other documents relating to the motion for reconsideration were included in defendant's appendix on appeal, neither party included plaintiff's original moving papers in support of reconsideration.

A-1106-19

reconsideration in part and denied defendant's cross-motion to depose plaintiff's counsel. The motion judge rendered a thorough oral opinion reversing the trial judge's decision to reduce counsel's fees by 50%. The motion judge recalculated the billable hours, increasing the award of counsel fees from $34,440 to $71,720 and pre-judgment interest from $5,561 to $5,850.07.

## II.

Defendant contends the trial judge committed numerous errors warranting a new trial. Specifically, defendant contends the trial judge erred in denying his motion for a new trial because: (1) plaintiff was permitted to re-open her case to allow counsel to ask her expert witness whether his opinion was rendered to a reasonable degree of medical certainty; (2) plaintiff's attorney improperly asked plaintiff's expert whether plaintiff was "neurologically intact"; (3) plaintiff was improperly allowed to testify that she prematurely ceased seeking medical treatment because she did not have the means to continue treatment for her injuries; (4) plaintiff's counsel was permitted to read to the jury defendant's deposition testimony from the companion matter involving plaintiff's passenger; and (5) the trial judge did not adequately address improper comments made by plaintiff's counsel during his summation.

6

We address each asserted error in turn. Because we affirm substantially for the reasons explained in the trial judge's comprehensive written opinion denying the motion for a new trial, we need not address defendant's contentions at length in this opinion. We preface our examination of defendant's arguments by acknowledging the general legal principles that guide our analysis. Rule 4:49-1 sets forth the standard for granting a motion for a new trial, providing that the trial court should grant such a motion where, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." The scope of our review is narrow and "ordinarily [we] do not set [civil jury verdicts] aside and order a new trial unless there has been a proven manifest injustice." Jacobs v. Jersey Central Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017) (citing R. 4:49-1). We accord "considerable deference to a trial court's decision to order a new trial, as the trial court has gained a 'feel of the case' through the long days of the trial." Lanzet v. Greenberg, 126 N.J. 168, 175 (1991); accord Conklin v. Hannoch Weisman, 145 N.J. 395, 407 (1996). We add that "[i]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v.

Demello, 191 N.J. 18, 31 (2007)); accord Jacobs, 452 N.J. Super. at 502 ("Ordinarily we will not set aside civil verdicts on this basis unless the court has abused its discretion, including with respect to issues of the admissibility of expert opinion.").

A.

At the close of both parties' cases, over defendant's objection, the trial judge permitted plaintiff to re-open her case for the limited purpose of asking her expert witness to affirm that his opinion had been given "within a reasonable degree of medical certainty." Plaintiff's counsel neglected to pose this question to the expert in plaintiff's case-in-chief.

Plaintiff's counsel then posed a single question to the expert: "[w]ere all of the opinions that you gave in this case given with a reasonable degree of medical certainty?" On cross-examination, plaintiff's expert reiterated that although his initial testimony did not include that statement, the opinions he rendered in his earlier testimony were indeed within a reasonable degree of medical probability.

We conclude the trial court did not abuse its discretion in permitting the plaintiff to reopen her case. Cf., N.J.R.E. 611 ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and

8

presenting evidence to (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time . . . .") The cure did not unduly prolong the proceedings, nor did it result in a miscarriage of justice. We also add that the trial judge extended a similar courtesy to defendant, permitting defendant's counsel to re-open his case to admit x-ray evidence that counsel had neglected to submit into evidence.

## B.

Defendant's counsel objected when plaintiff's attorney began questioning plaintiff's expert as to the treatment of patients who are not neurologically intact. The trial judge sustained the objection, ruling that raising the issue of plaintiff's neurological state would confuse the jury. Defendant's counsel did not move to strike this testimony.

In the written opinion denying defendant's motion for a new trial, the trial judge explained that the expert's remarks concerning plaintiff's neurological state,

> while marginally speculative, were not unduly prejudicial and further constituted permissive inferences drawn by an expert from opinions set forth in his narrative report. The [c]ourt found that, accordingly, no curative instruction was necessary at that time. The [c]ourt cautioned the parties, however, that similar speculation regarding [p]laintiff's injuries

A-1106-19

had she not been found neurologically intact would not be permitted.

We are satisfied the trial judge did not abuse her discretion by failing to sua sponte strike the testimony or issue a curative instruction to the jury.

C.

Defendant next contends the trial judge erred by allowing plaintiff's counsel to question plaintiff regarding her financial inability to continue treatment. We agree with the trial judge that defendant's counsel "opened the door" to this line of questioning when he commented in his opening statement that plaintiff prematurely ceased care with her chiropractor. See State v. James, 144 N.J. 538, 554 (1996) ("The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence.").

Defendant cites to Morales-Hurtado v. Reinoso, 457 N.J. Super. 170, 193 n.6 (App. Div. 2018), aff'd, 241 N.J. 590 (2020), for the proposition that it was inappropriate for plaintiff's counsel to question her about defense counsel's opening statement. However, defendant's reliance on Morales-Hurtado is misplaced. The portion of the opinion cited by defendant notes that it was inappropriate in that case for defense counsel on cross-examination to ask the

plaintiff about a comment his own counsel made in his opening statement.[4] Morales-Hurtado does not prohibit an attorney from posing questions to a client on direct-examination about a subject that was raised in opposing counsel's opening statement. We do not read Morales-Hurtado to foreclose application of the "opening the door" principle to comments made by an attorney in his or her opening statement.

We add that in this instance, defendant's counsel did not propose a curative instruction but rather elected to cross-examine plaintiff regarding her financial ability to continue treatment with her chiropractor. Nor did defendant's counsel ask for an instruction explaining the limited purpose for which the jury should consider this testimony. In these circumstances, we see no abuse of discretion or miscarriage of justice in allowing plaintiff to explain why she ceased treatment with her chiropractor.

## D.

We likewise reject defendant's contention that the trial court abused its discretion by allowing plaintiff's counsel to read to the jury portions of

---

[4] The footnote defendant relies on states: "Defense counsel also asked plaintiff a question about a comment plaintiff's attorney made in his opening statement. Cross-examining a party about his attorney's opening statement is improper." Morales-Hurtado, 457 N.J. Super. at 193 n.6.

defendant's deposition transcript from the passenger's case that was settled. That case was consolidated with the present matter. Furthermore, as the trial court noted in its written opinion, defendant's counsel had agreed that this testimony could be introduced into evidence. We add that even absent that stipulation, defendant's deposition testimony would be admissible under N.J.R.E. 803(b) as a statement by a party-opponent.

### E.

We next turn to defendant's contention that he was entitled to a new trial because plaintiff's counsel made several prejudicial statements in his summation. Specifically, defendant argues that during closing argument, plaintiff's counsel: (1) improperly asked the jury not to marginalize plaintiff's case;[5] (2) referred to the expert testimony regarding plaintiff's neurological state the trial court had ruled inadmissible;[6] (3) improperly remarked that defendant "did not call a bio-mechanical expert who was going to tell you that this accident

---

[5] Counsel argued in summation, "[y]ou know, you really have two choices under the law. You can treat her fairly and give her a fair and just verdict or you can marginalize her and her case and say that it simply doesn't matter."

[6] Counsel argued in summation, "[b]ut [plaintiff's expert] says [plaintiff's] neurologically intact. I would submit to you if she (indiscernible) neurologically intact she'd probably be on an operating table—somewhere."

could have happened"; and (4) attempted to impermissibly invoke the so-called "golden rule," which asks jurors to award the damages they would want if they were in plaintiff's position rather than award the damages a reasonable person would deem to be fair and adequate.[7]

Counsel is generally afforded broad latitude in making closing arguments. Brenman v. Demello, 191 N.J. 18, 33 (2007). When that latitude is exceeded, "a clear and firm jury charge may cure any prejudice created by counsel's improper remarks during opening or closing argument." City of Linden, Cnty. of Union v. Benedict Motel Corp., 370 N.J. Super. 372, 398 (App. Div. 2004).

The record shows that plaintiff's counsel made a timely objection to the first four remarks we enumerated. The trial judge sustained those objections

---

[7] In Geler v. Akawie, we explained that "[a]s early as 1910, our courts recognized that . . . jurors were not free to adopt what they would want as compensation for injury, pain[,] and suffering, but were instead required to base their verdict upon what a reasonable person would find to be fair and adequate in the circumstances. 358 N.J. Super. 437, 464 (App. Div. 2003) (citing Goodrich v. Thomas Cort, Inc., 80 N.J.L. 653, 657 (Sup.Ct. 1910)). Accordingly, "[t]he Old Testament's "golden rule" that you should do unto others as you would wish them to do unto you may not be applied in this context." Ibid. (citing Botta v. Brunner, 26 N.J. 82, 94 (1958)). We recognized in Geler that "the difficulty that inheres in an invocation of the golden rule in place of the standard articulated in Botta is that it 'encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" Id. at 464–65 (citing Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir. 1982)).

and instructed the jury to disregard counsel's comments. We are satisfied that with respect to these remarks, the trial judge acted promptly and decisively in issuing a "clear and firm" jury instruction that cured any prejudice. Ibid.

Defendant's contention regarding the alleged invocation of the "golden rule" stands in a different procedural posture. The record before us does not indicate that defendant actually raised an objection to the comment during or following the summation. Thus, the trial judge was not afforded an opportunity to address the issue and deliver a timely curative instruction. See State v. Bauman, 298 N.J. Super. 176, 207 (App. Div. 1997) ("We recognize the general reluctance of counsel to object during a summation yet recognize that an objection immediately following summation does permit curative action by the judge. Silence on the part of counsel and a subsequent motion for a new trial cannot be condoned."). We do not see in this case any reluctance on the part of defendant's counsel in interrupting plaintiff's closing arguments. As we noted earlier, counsel made several other timely—and successful—objections that prompted curative instructions. As such, we believe the failure to make a timely objection with respect to the alleged golden rule transgression indicates that counsel did not believe the remarks were prejudicial as defendant now claims. Cf., State v. Irving, 114 N.J. 427, 444 (1989) ("[D]efense counsel's failure to

14

make an objection at trial creates an inference that he [or she] did not find the prosecutor's remarks prejudicial.") (citing State v. Johnson, 31 N.J. 489, 511 (1960)).

Furthermore, as both parties acknowledged at oral argument before us, the trial transcript is indiscernible at the point where plaintiff's counsel is alleged to have invoked the golden rule.[8] Defendant never moved to clarify or supplement the record. Based on the record on appeal, we conclude defendant has failed to demonstrate that an inappropriate reference to the golden rule even occurred, much less that counsel's remarks warrant reversal and a new trial.

## III.

Defendant contends the numerous asserted errors he attributes to the trial judge collectively created such severe prejudice to defendant as to warrant a new trial. We find no merit in that contention.[9]

---

[8] Both parties cite to the portion of the trial transcript that reads: "[t]he question is what would it take, what would somebody accept as compensation as wages (indiscernible)?"

[9] We note defendant's cumulative error argument was first raised as a formal point heading in defendant's reply brief. Our courts have long held that "a party may not advance a new argument in a reply brief." Bouie v. N.J. Dep't of Cmty. Affairs, 407 N.J. Super. 518, 525 n.1 (App. Div. 2009) (citing Borough of Berlin v. Remington Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001)). We nonetheless elect to address defendant's contentions on the merits.

In Pellicer ex rel. Pellicer v. St. Barnabas Hosp., the Supreme Court noted that in appropriate circumstances, "a new trial may be warranted when 'there were too many errors [and] the errors relate to relevant matters and in the aggregate rendered the trial unfair.'" 200 N.J. 22, 55 (2009) (alteration in original) (quoting Diakamopoulos v. Monmouth Med. Ctr., 312 N.J. Super. 20, 37 (App. Div. 1998)). The Court identified four factors: (1) whether the trial court's cumulative errors pervaded the whole trial; (2) whether the trial court's "troubling discretionary decisions" opened the door to inflaming the jury's view of the evidence by pushing the jury to make "inappropriate and irrelevant" considerations; (3) whether the trial court failed to treat the parties fairly and evenhandedly; and (4) whether a "review of the complete record, including the jury selection method and the quantum of the verdict," distinctly suggested that the aggrieved party was not "accorded justice." Id. at 55–56.

In the present case, defendant has not established any of these factors. Indeed, for the reasons we have already explained, we reject each of defendant's separate contentions that the trial judge committed error in managing the trial. We therefore conclude the trial court committed none of the claimed errors, much less multiple errors whose cumulative effect warrants a reversal and new trial.

A-1106-19

# IV.

We next address defendant's contention that the motion judge erred in modifying the trial judge's award of counsel fees and costs. Rule 4:49-2 governs motions for reconsideration that seek to alter or amend a judgment or order. Reconsideration rests within the sound discretion of the court and is to be exercised in the interest of justice. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Reconsideration is appropriate, however, only in cases "which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). The moving party must demonstrate that the court acted "in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." Ibid. Alternatively, a movant may ask the court to reconsider a prior decision or order if there is new or additional information that the movant could not have provided on its first application for relief. Ibid. A litigant should not, however, seek reconsideration "merely because of dissatisfaction with a decision of the [c]ourt." Ibid.

Informed by these general standards for reviewing motions for reconsideration, we turn to the substantive principles governing the award of fees and costs to a prevailing litigant. When a defendant rejects the plaintiff's offer of judgment and the plaintiff later recovers a money judgment in excess of 120% of the rejected offer, the plaintiff is entitled to recover the "costs of suit[,] all reasonable litigation expenses incurred following non-acceptance[,] prejudgment interest[,] and a reasonable attorney's fee for such subsequent services as are compelled by the non-acceptance." R. 4:58-2(a).

Plaintiff originally made an offer of judgment for $35,000 in April 2015 and a second offer of judgment for $20,000 following the arbitration award in her favor in April 2018. Defendant rejected both offers. The jury awarded plaintiff $99,360 in damages and the trial judge accordingly awarded counsel fees for the time expended since the original offer of judgment in April 2015. However, the trial judge reduced the award by 50%, premised upon her finding the fee certification submitted by plaintiff's attorney included entries that were either duplicative, administrative/secretarial tasks performed by the attorney, unsupported by evidence, or reconstructed because of lack of contemporaneous billing records.

A-1106-19

On reconsideration, the motion judge concluded that while the trial judge had thoughtfully identified concerns relating to counsel's billing practices and entries, she was nonetheless mistaken in declining to award fees for certain entries and acted arbitrarily by reducing the total fee award by 50% without providing a more specific explanation for choosing that percentage reduction.

Defendant argues on appeal that the motion court "abused its discretion when upon reconsideration it increased the award of attorney's fees" and "did not have a clear understanding of the facts underlying this case that caused [the trial judge] to limit the award of attorney's fees." We disagree. The record shows the motion judge meticulously reviewed the relevant documentation.

We agree with the motion judge that although the trial court identified particular entries in which it disagreed with the attorney fee records, the trial court failed to provide either supporting legal authority or a specific explanation as to how exactly it arrived at the 50% reduction. We believe the appropriate remedy was to subtract from the total award the billed hours associated with the identified problematic entries. That is precisely what the motion judge did after conducting an exhaustive review of the case file. Furthermore, the motion judge

19

identified specific instances in which he found the trial judge either erred[10] or did not have the benefit of supporting documentation.[11] Based upon that painstaking analysis, the motion judge concluded the trial judge's reduction of hours by 50% "was an extreme measure" that required correction. We are satisfied the motion judge identified specific instances where the trial judge erred in reducing the counsel fee award and that the motion judge made appropriate corrective adjustments.

---

[10] By way of example, the motion judge found that the trial judge erred in reducing a ten-hour billing entry on October 17, 2018 to five hours, given that the trial judge had directed counsel to be present in court for trial from 8:30 a.m. to 4:30 p.m. and counsel had conservatively billed a couple hours after trial for travel time to his office and preparation for continued trial the next day. Cf., H.I.P. v. K. Hovnanian at Mahwah, Inc., 291 N.J. Super. 144, 164–65 (Law Div. 1996) (noting a counsel fee award could properly include billable hours for attorney travel time). We highlight this to show the meticulous detail with which the motion judge reviewed the voluminous record.

[11] We recognize the standard for reconsideration generally would require the supporting documentation to have been submitted in the original application. See Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) ("A motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, R. 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record.") (citing Cummings, 295 N.J. at 384). The motion judge acknowledged this general principle but nonetheless accepted and carefully reviewed the case file presented in support of the motion for reconsideration. We note that while defendant appeals from the motion court's order granting reconsideration and modifying the award of fees and costs, defendant does not specifically argue that the motion judge erred in accepting and reviewing the plaintiff's case file.

20

We further hold that the motion judge did not abuse his discretion in denying defendant's cross-motion to compel deposition of plaintiff's counsel in connection with his fee certification. The motion judge aptly noted that under Kerr v. Able Sanitary and Env't Servs, Inc., 295 N.J. Super. 147, 155 (App. Div. 1996), deposition of opposing counsel is disfavored due to the inherent likelihood of "delay, disruption, harassment, and even disqualification of the attorney from further representation of the client in the underlying litigation." We agree with the motion judge that defendant has not demonstrated a legitimate need to depose plaintiff's counsel given that defendant was afforded an opportunity to examine the same supporting documentation that was submitted to the court. See Kerr, 295 N.J. Super. at 155 ("Here, we are convinced that an order requiring adverse counsel to submit to a deposition must rest on a clear determination that the information sought is not only relevant but is within the proponent's legitimate discovery needs as determined in the context of the particular case.").

A-1106-19

VI.

Finally, we address plaintiff's cross-appeal. Plaintiff contends the trial judge erred in denying expert witness fees in the amount of $4,500, as part of "reasonable litigation expenses" under the offer of judgment rule, Rule 4:58-2.[12] We disagree. As the trial court noted, we have previously held that as a general matter, expert fees are not awardable as reasonable litigation expenses. As we explained in Maintainco Inc. v. Mitsubishi, "[g]enerally, 'litigants bear their own expenses for fees and costs, except where specifically authorized by statute, rule, or agreement.'" 408 N.J. Super. 461, 481–82 (App. Div. 2009) (quoting Josantos Constr. v. Bohrer, 326 N.J. Super. 42, 47–48 (App. Div. 1999)). In Buccina v. Micheletti, we reiterated: "expenses for either an expert preparing for trial or obtaining an expert's report are merely costs incident to trial preparation. In the absence of statute or rule, they are part of the expenses that must be borne by every litigant in their own case." 311 N.J. Super. 557, 566 (App. Div. 1998) (citing Hirsch v. Tushill, Ltd., Inc., 110 N.J. 644, 648–49 (1988)).

We note that in contrast to Rule 4:58-2, the statute governing arbitration of automobile negligence cases, explicitly lists expert fees as an awardable cost.

---

[12] As we have noted, although plaintiff sought reconsideration of the trial judge's decision to reduce the total award, plaintiff did not seek reconsideration of the trial judge's decision to exclude expert witness fees from that award.

 A-1106-19

N.J.S.A. 39:6A-34 provides, in pertinent part: "[t]he party having filed for a trial de novo shall be assessed court costs and other reasonable costs of the other party to the judicial proceeding, including attorney's fees, investigation expenses and expenses for expert or other testimony or evidence . . . ." (emphasis added). While this statute thus expressly authorizes the assessment of expenses for expert testimony when a party unsuccessfully attempts to reject an arbitration award, plaintiff failed to present the applicability of this statutory provision in any of her submissions either to the trial court or on appeal, neither party cites this provision, and the record on appeal does not indicate which party filed for a trial de novo from the arbitration proceedings. Accordingly, on the record before us, we have no basis upon which to disturb the trial court's decision to exclude witness fees from the award of costs and fees under Rule 4:58-2.

To the extent we have not addressed them, any remaining arguments raised by defendant in his appeal or plaintiff in her cross-appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION