**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2806-19

IN THE MATTER OF THE
ESTATE OF ROSALIE JEAN
RYAN, Deceased.

_____

Argued September 30, 2021 – Decided December 1, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. P-16-705.

John H. Shindle argued the cause for appellants Patrick Kirschling, Thomas Kirschling, William Kirschling, John Kirschling, and Michael Kirschling (Ward, Shindle & Hall, attorneys; Thomas H. Ward and John H. Shindle, on the briefs).

Daniel L. Mellor argued the cause for respondent Veronica A. Kirschling (Kulzer & DiPadova, PA, attorneys; Daniel L. Mellor, on the brief).

PER CURIAM

Plaintiffs, the five Kirschling brothers—Patrick, Thomas, William, John, and Michael[1]—appeal from a January 30, 2020 judgment awarding them $15,000[2] after a bench trial. The sum was to be paid by their sister, Veronica (Bonnie) Kirschling. We affirm.

Plaintiffs' verified complaint sought an accounting of the estate of decedent Rosalie Jeanne Ryan, the parties' aunt. The complaint alleged Bonnie breached her fiduciary duty towards decedent, for whom she held a power of attorney (POA), and further alleged causes of action arising from the alleged breach. At the time of her death, Medicaid had a $232,619.57 lien against her estate for unreimbursed nursing home and medical care accrued during the last four years of decedent's life. She died on March 29, 2014.

Prior to this litigation, plaintiffs had sued Bonnie regarding their mother's estate. Their mother, Vera Kirschling, died on November 4, 2010. The same judge heard both matters. Plaintiffs in that litigation sued Bonnie for breaching her fiduciary duty with regard to the mother's estate and for malicious interference.

---

[1] For clarity, the parties are referred to by their first names.

[2] The judge directed the $15,000 be paid by Bonnie to decedent's estate, thereby, as stated in the judgment, "subject[ing] it to the Medicaid lien."

A-2806-19

During discovery in that litigation, plaintiffs obtained records and financial information regarding decedent. They deposed Bonnie regarding decedent's direct deposit authorizations, annuity statements, the POAs she signed in favor of Bonnie in 2003, and correspondence with the United States Internal Revenue Service.

When plaintiffs settled the litigation in August 2013 regarding Vera's estate, the agreement included a provision that made Patrick a signatory on all accounts "maintained for the benefit of" decedent. It was further agreed that at her death all such accounts would be distributed equally. The settlement agreement resolved "all claims which were raised or which could have been raised in the [l]itigation[.]" Further, plaintiffs agreed to release any claims against Bonnie, "including but not limited to all claims which" could have been brought at that time. In this case, the judge held that the settlement did not bar claims regarding an account about which plaintiffs were unaware when the agreement was reached. When she died, decedent's estate consisted of $5,583.85, spent entirely on funeral expenses.

By the time this lawsuit was filed in 2016, the relevant financial institutions had destroyed any records regarding decedent's accounts more than

A-2806-19

five years old. Additionally, Bonnie discarded many records herself in accordance with common tax advice, and she lost some records to flooding.

In 2003, Bonnie moved decedent, then eighty-three, into the home she shared with her mother. Patrick helped decedent relocate and informed the other plaintiffs of decedent's change in residence. Everyone in the family had been concerned for some time about decedent's diminishing capacity to care for herself.

Soon after the move, Bonnie changed the locks on her home, and only Michael had the code to enter through the garage. Vera and Bonnie used their own funds to maintain decedent's empty apartment in Pittsburgh for the first eighteen months she lived with them in Swedesboro. Decedent authorized the direct deposit of her pension on April 28, 2004, directly into an "835" bank account in Bonnie's name only.

When the settlement was reached, plaintiffs were unaware of the account's existence. At one point, Vera and Bonnie deposited $90,000 into the 835 account from their own funds. Decedent contributed to household expenses from that account. Decedent's move to a nursing home in January 2010 was not subsidized by Medicaid for several months—during which time it was funded by Vera and Bonnie.

A-2806-19

Pre-trial, plaintiffs could not secure records going back to 2004 because they did not exist. In discovery, plaintiffs moved to compel Bonnie to author a detailed financial certification covering the years 2003 to 2014. When they moved for an order compelling Bonnie to complete the certification, the judge refused because it would be impossible for anyone to provide such detailed information from memory.

Plaintiffs deposed Bonnie over five days in this litigation and were able to obtain from the bank the history for the 835 account. Plaintiffs identified twelve "unexplained" transactions, both deposits and withdrawals. They claimed the unexplained transactions totaled $254,433.70. The trial judge flagged $250,849.70 in unexplained transactions. However, after applying laches and the statute of limitations, the judge concluded she would only consider unexplained transactions dating back to May 13, 2010. She entered judgment for $15,000 because the unexplained transactions falling within this five-year range totaled that amount. She specified that the funds were not necessarily wrongfully taken, rather, they were merely unexplained as Bonnie was unable to recall the reason for the withdrawals. The judge observed that Bonnie took good care of decedent beginning in 2004 when she moved in.

5

The judge spent an hour and a half rendering her decision in open court. The first twenty-five pages of the transcript include her findings of fact. Although the judge did not specifically state that Bonnie was credible, the majority of her findings presumed her credibility, as there was no other basis for the finding.

The trial judge barred an expert plaintiffs proposed to offer during the trial regarding Bonnie's accounts. The judge considered it reasonable for the parties to expect discovery to end within one year of the inception of the litigation, despite the lack of a formal discovery end date or order. This was particularly true in this case since plaintiffs proposed their expert after they had already moved for summary judgment.

Plaintiffs raise the following points on appeal:

POINT I

PRE-TRIAL DISCOVERY WAS IMPROPERLY RESTRICTED, RESULTING IN A MISCARRIAGE OF JUSTICE.

6

POINT II

PLAINTIFFS' EXPERT WAS IMPROPERLY BARRED BEFORE A TRIAL DATE WAS SET.

POINT III

IT WAS ERROR TO APPLY THE STATUTE OF LIMITATIONS, AS THE DISCOVERY RULE TOLLED THE ACCRUAL OF PLAINTIFFS' CAUSE OF ACTION.

A.    The legal standard for applying the discovery rule supports a remand in favor of the [p]laintiffs.

B.    The trial court relied on irrelevant factual information which did not, and could not, provide notice of the [d]efendant's breaches of her fiduciary duties.

C.    The [p]laintiffs did not have knowledge of their standing prior to the [d]ecedent's death.

D.    At a minimum a remand is necessary for a trial on the issue of when the [p]laintiffs knew, or should have known, that the [d]efendant first began the breaches of her fiduciary duties.

POINT IV

THE DEFENSE OF LACHES IS NOT APPLICABLE (1) WHERE PLAINTIFFS DID NOT DELAY IN BRINGING SUIT AND (2) WHERE DEFENDANT CONCEALED HER BREACHES OF FIDUCIARY DUTY.

A-2806-19

A.     The [d]efense of [l]aches [d]oes [n]ot [a]pply, [a]s [a]ccrual [d]oes [n]ot [b]egin [u]ntil the [p]laintiffs had [r]eason to [k]now of [t]heir [c]laim.

B.     The [d]efense of [l]aches is [n]ot [l]egally [a]vailable to a [d]efendant/[f]iduciary [w]ho [e]ngaged in [f]raud.

D.     New Jersey [c]ourts have consistently found laches do not apply in the case of a breaching fiduciary.

POINT V

THE TRIAL COURT FAILED TO CONDUCT A FACTUAL ANALYSIS TO ADDRESS TWELVE INSTANCES OF "UNEXPLAINED" TRANSACTIONS.

POINT VI

THE TRIAL COURT FAILED TO MAKE CREDIBILITY DETERMINATIONS AS TO THE DEFENDANT'S CONFLICTING TESTIMONY.

POINT VII

THE TRIAL COURT'S ORAL DECISION, COMPLETED WITHOUT ANY PRE OR POST TRIAL BRIEFING IS AMBIGUOUS AND SUBJECT TO INTERPRETATION.

POINT VIII

THE TRIAL COURT DID NOT ADDRESS DEFENDANT'S BURDEN TO PROVE THAT THERE WAS NO BREACH IN HER FIDUCIARY DUTY.

A-2806-19

POINT IX

THE RELEVANT POWER OF ATTORNEY STATUTES, 20 PA. C.S.A. § 5601.3 AND N.J.S.A. § 46:2B-8.13(B), IMPOSE A NON-DELEGABLE DUTY UPON THE POWER OF ATTORNEY TO MAINTAIN HER OWN RECORDS INDEPENDENT OF A BANK'S RECORDKEEPING PRACTICES.

I.

A judge's discovery decision is reviewed for abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). Such an abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)). We defer to a court's disposition of discovery matters absent such an abuse of discretion or a misunderstanding of the law. Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005).

The judge did not abuse her discretion by denying plaintiffs' motion to compel Bonnie to certify her financial information. The requested information included:

> a balance sheet with supporting schedules and income statements; cash and bank money market funds; [any] life insurance carried, including group insurance;

readily marketable securities and mutual funds; nonmarketable securities; real estate for personal use; real estate investments; income statements, including salary, bonuses, commissions, rental income, interest and dividends, capital gains, and other; annual expenditures, including property taxes, income taxes, mortgage payments, other loan payments, insurance payments, rental payments, alimony, child support maintenance paid or received, tuition, living and medical expenses and other expenses and that's for a per annum for the years from 2003 to 2014.

First, it is self-evident that certified financial statements do not fall within the discovery rules. Furthermore, as the judge observed, no one could be expected to recreate eleven years of detailed financial information without any access to records. Additionally, plaintiffs did depose Bonnie, providing another avenue through which to obtain whatever information was available to her. Thus, it was not an abuse of discretion to deny plaintiffs' application both because the records were unavailable and alternate means of obtaining the information were available through interrogatories or deposition.

Nor was it an abuse of discretion for the judge to have barred the financial expert, a decision also subject to abuse of discretion review. See Townsend v. Pierre, 221 N.J. 36, 52 (2015); Brenman v. Demello, 191 N.J. 18, 31 (2007).

Civil discovery deadlines range from 150 to 450 days. R. 4:24-1(a). Plaintiffs' aim of forensically reconstructing Bonnie's financial history was

raised hundreds of days after the rule timeframe. Plaintiffs were over 600 days late under even the most generous deadline available for a Track IV case, which is 450 days. See ibid. As the judge said, plaintiffs had already filed for summary judgment, and it is customary for discovery to be completed before a motion for summary judgment is filed. In this case, the judge did not abuse her discretion by denying the admission of an expert report or any of her other rulings regarding discovery.

II.

The meaning of "accrued" and the applicability of the discovery rule are matters of law, which we review de novo. The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

A cause of action accrues when the right to file arises. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 394 (2016). The purpose of statutes of limitation is to enable parties to defend themselves with reliable recollection before evidence is lost to the passage of time. Lopez v. Swyer, 62 N.J. 267, 274 (1973).

Although the discovery rule is an equitable rule intended to avoid harsh consequences from a mechanical application of a statute of limitation, it is not applicable when a reasonable person exercising ordinary diligence knew or should have known of the injury at issue. Szczuvelek v. Harborside Healthcare

11

Woods Edge, 182 N.J. 275, 281, 283 (2005). The party invoking the discovery rule bears the burden of proof. Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001); see also Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134-35 (2017).

In determining whether the discovery rule applies, judges turn to factors such as:

> the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, [and] whether the delay may be said to have peculiarly or unusually prejudiced the defendant.
>
> [Lopez, 62 N.J at 276.]

We are unconvinced that plaintiffs should avoid application of the statute of limitations through the discovery rule.

The judge found that the family knew of decedent's cognitive issues and inability to care for herself independently as early as 2003. Thus, the judge rationally applied the six-year statute of limitations beginning in 2004 when Bonnie first commingled funds in the 835 account. Thus, plaintiffs' claim was long expired by the time they filed their complaint on May 13, 2016. The judge rationally found that, had plaintiffs been diligent, they would have learned of their potential claims years earlier. They knew decedent was unable to manage

12

her affairs, and they had the opportunity to address the issue when she moved in with Bonnie. They could have anticipated these potential claims when they litigated their mother's estate and settled under terms that included decedent's estate. At that juncture, plaintiffs did not know decedent's will made everyone a beneficiary, but they obviously suspected Bonnie's management of their aunt's funds—otherwise, the settlement agreement would have been silent as to their aunt's finances.

## III.

Plaintiffs claim the trial judge's application of the doctrine of laches was error. Laches is an equitable affirmative defense barring recovery where unexplainable and inexcusable delay in bringing suit prejudiced another party. Fox v. Millman, 210 N.J. 401, 417 (2012). The trial court has discretion to apply laches based on the particular circumstances of the case. Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004). The factors that control the decision include the length of delay, reasons for the delay, and changes in the parties' conditions attributable to the delay. Cnty. of Morris v. Fauver, 153 N.J. 80, 105 (1998); see also Knorr v. Smeal, 178 N.J. 169, 181 (2003) ("The core equitable concern in applying laches is whether a party has been harmed by the delay."). Decisions regarding application of the doctrine are reviewed for abuse of discretion. See

13

United States v. Scurry, 193 N.J. 492, 503-04 (2008) (holding "the application of the doctrine of laches . . . constituted an abuse of discretion . . . ."). Laches may apply if a party has both knowledge and opportunity to assert his rights in the proper forum. Fauver, 153 N.J. at 105.

There is no doubt that plaintiffs knew of decedent's failing state of mind and inability to care for herself. Had plaintiffs initiated legal action in 2003, the financial records would have been available, and Bonnie's recollection would have been fresh. Yet, over the years, as the judge observed, "there was never any action taken to check to see what decedent's status was, what Vera's status was, or to bring an action so they could get access to these two elderly women who were becoming increasingly frail."

During the litigation regarding Vera's estate, Patrick demanded in discovery and photographed documents relating to decedent's financial status, including her Form 1099, annuity statements, and the POA. The discovery in that litigation alerted Patrick to at least some of the same issues regarding Bonnie's control of decedent's accounts. He even accused Bonnie of isolating the two women from plaintiffs. Plaintiffs had the same concerns then as now; they should have filed then. Instead, they did nothing for years. The judge's application of laches to bar their claims is thus proper.

There is no discernible reason why plaintiffs delayed litigation about decedent's estate when they were suspicious of Bonnie's management of decedent's funds as early as 2011. Their failure to sue earlier left Bonnie without the records necessary to defend herself, essentially without recourse.

Bonnie's argument that laches is unavailable to persons who commit fraud is inapposite. The judge found no fraud. Additionally, given that the three women lived together for years, and shared expenses before decedent went to the nursing home, innocent commingling of funds was to be expected. Although the judge did find that Bonnie breached her fiduciary duty by commingling, the judge also concluded the breach did not damage plaintiffs. Bonnie did not actively or maliciously engage in conduct hidden from plaintiffs. Hence, the judge was justified in applying laches because plaintiffs' unexplained and inexcusable delay prejudiced Bonnie. See Millman, 210 N.J. at 412.

IV.

As required by Rule 1:7-4, the judge made the required factual findings and thoroughly explained her legal conclusions. Because trial judges have opportunities to view demeanor, and decide matters that are largely testimonial and involve questions of credibility, we review their decisions in that arena deferentially. Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017).

A-2806-19

We disturb such factual findings, and even legal conclusions, only when convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice." In re Forfeiture of Pers. Weapons and Firearms Identification Card belonging to F.M., 225 N.J. 487, 506 (2016) (quoting Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). The judge's findings do not fit that category.

Applying the statute of limitations and laches, the judge only found Bonnie failed to account for an October 7, 2013, withdrawal of $15,000. This was the basis for her award to the estate. Despite the judge's conclusion that there were other unexplained transactions, she barred recovery for those transactions because they fell within the timeframe covered by the statute of limitations and laches.

By designating certain transactions as "unexplained," the judge did not characterize them as a wrongful taking of decedent's assets. This was reasonable in terms of the payments that Bonnie made towards the care of both her elderly relatives and of "unexplained" deposits. For example, the judge found no reimbursement for credit card expenses—yet Bonnie testified that she was

16

reimbursed from the 835 account for credit card expenses incurred on decedent's behalf.

Plaintiffs assert the unexplained withdrawals total $254,433.70. This sum is less than the Medicaid lien. As it stands, the award of $15,000 payable by Bonnie passes through the estate in satisfaction of the Medicaid lien. We see no error in any of the judge's findings of fact or conclusions of law, and we are frankly unclear as to how plaintiffs could recover any damages given the amount of the Medicaid lien.

V.

Plaintiffs' other alleged points of error are so lacking in merit as to not warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2806-19